2001 SD 87

**WESTFIELD INSURANCE COMPANY, INC., Plaintiff and Appellee,**

v.

**Melissa Beth ROWE, Personal Representative of the ESTATE OF Rita GALLANT, Deceased; and David Gallant, Personal Representative of the Estate of Robert Gallant, Deceased, Defendants and Appellants.**

**No. 21729.**

Supreme Court of South Dakota.

Considered on Briefs May 29, 2001.

Decided July 3, 2001.

Jennifer K. Trucano of Gunderson, Palmer, Goodsell & Nelson Rapid City, SD, Attorney for plaintiff and appellee.

Robert L. Morris of Quinn, Eiesland, Day and Barker Belle Fourche, SD, Attorneys for defendants and appellants.

GILBERTSON, Justice.

[¶ 1.] At the time of their deaths, Robert and Rita Gallant (Gallants) were insured through Westfield Insurance Company (Westfield). Melissa Rowe and David Gallant (Rowe), as personal representatives of the Gallant estates, collected $750,000 from the tortfeasor's liability carrier Great West Casualty Company (Great West). Rowe then sought underinsured motorist benefits from the Gallants' policy. Westfield denied those benefits and commenced this declaratory judgment action. The circuit court granted summary judgment to Westfield, from which Rowe has appealed. We affirm the circuit court's decision.

## FACTS AND PROCEDURE

[¶ 2.] Gallants were residents of Rapid City, South Dakota. Their vehicles were insured by Westfield. On December 21, 1998, while traveling in Arizona, Gallants were involved in a traffic accident when their motor home was hit by a tractor-trailer. Both died as a result of injuries sustained during the accident. The truck driver was employed by J.M. Carpenter, Inc., which was insured by Great West.

[¶ 3.] Rowe received $144,660.69 from Westfield to cover the property damage sustained in the accident. Pursuant to the policy language, Westfield requested reimbursement if Rowe received payment from Great West. Shortly after the accident, Great West paid Rowe the policy limits of $750,000 in exchange for a release of its insureds. Westfield was informed of, and agreed to, this release. Rowe then submitted a claim to Westfield for underinsured motorist (UIM) benefits under Gallants' policy. The UIM policy limit is $500,000 for "any one auto accident." Rather than differentiating between "per-person" and "per-accident" limitations, this "single limit" policy limits coverage to $500,000 for any one accident. Westfield denied UIM benefits and instituted this declaratory action to determine the parties' rights. The circuit court granted summary judgment to Westfield, finding the "difference in limits" standard in SDCL 58–11–9.5 precluded Rowe from recovering benefits. The circuit court also found Westfield was entitled to reimbursement of the $144,066.69 it previously paid Rowe for property damage. On appeal, Rowe raises two issues:

1. Whether the "difference in limits" standard in SDCL 58–11–9.5, as applied to the Westfield policy, precludes coverage in situations involving multiple insureds.

2. Whether Westfield is entitled to subrogation.

## STANDARD OF REVIEW

[¶ 4.] As the parties do not allege any dispute as to material facts, on review of the circuit court's judgment we need only determine if the law was correctly applied. *Estate of Juhnke v. Marquardt*, 2001 SD 26, ¶ 5, 623 N.W.2d 731, 732. We will affirm summary judgment if it is correct for any reason. *Id.* The circuit court's interpretation of applicable statutes is given no deference under our de novo standard of review. *Maryott v. First Nat'l Bank of Eden*, 2001 SD 43, ¶ 17, 624 N.W.2d 96, 102. Interpretation of insurance policies is likewise a question of law, reviewed de novo. *Sawyer v. Farm Bureau Mut. Ins. Co.*, 2000 SD 144, ¶ 13, 619 N.W.2d 644, 648.

## ANALYSIS AND DECISION

[¶ 5.] **1. Whether the "difference in limits" standard in SDCL 58–11–9.5, as applied to the Westfield policy, precludes coverage in situations involving multiple insureds.**

[¶ 6.] Rowe argues she is entitled to UIM benefits under the policy. Under her theory, there are two claims being made against Westfield, one by Robert's estate, one by Rita's.[1] Collectively, the two estates received $750,000, leaving $375,000 to each estate. According to Rowe, the estates are "underinsured"[2] because the amount received by each estate is less than the limits on the Westfield policy. Under Rowe's theory, each estate is entitled to $125,000 in UIM benefits from Westfield ($500,000 less $375,000 yields $125,000).

[¶ 7.] Rowe claims her theory is supported by the reasoning of *Austin Mut. Ins. Co. v. King*, 29 F.3d 385 (8th Cir.1994) (interpreting South Dakota law). In that case, a vehicle driven by King was hit, causing serious injury to the six occupants of the King vehicle. Each occupant of the King vehicle made a claim against the other driver's liability insurance carrier. Those claims were settled for the per-accident limit of $100,000, which was split six ways. The occupants then filed claims under King's UIM policy, issued by Austin Mutual. That policy was limited to $50,000 per-person, and $100,000 per-accident. Austin Mutual filed a declaratory judgment action in federal district court and was granted summary judgment based on policy language and SDCL 58–11–9.5, because the aggregate amounts paid to the occupants equaled the limits of the Austin Mutual policy. That decision was reversed by the Eighth Circuit Court of Appeals, which held that the amount each claimant received from the tortfeasor should be compared to the $50,000 per-person limit in the Austin Mutual policy, rather than the $100,000 per-accident limit.[3] *Id.* at 389. The court based its decision largely on language in the policy pursuant to which Austin Mutual's liability was "subject to this limit *for each person.*" (emphasis added). *Id.* at 388. Because each claimant had received less than the $50,000 per-person limit, each was entitled to UIM benefits up to the per accident limit. Rowe urges this Court to adopt the same reasoning.

[¶ 8.] Our determination must begin with the relevant statutory authority. SDCL 58–11–9.5 provides:

> Subject to the terms and conditions of such underinsured motorist coverage, the insurance company agrees to pay its own insured for uncompensated damages as its insured may recover on account of bodily injury or death arising out of an automobile accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon. Coverage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering less the amount paid

---

1. Rowe actually argues there are 13 claims being submitted for UIM benefits, one for each beneficiary of Robert and Rita's estates. However, the beneficiaries of the estates are not the beneficiaries of the Westfield policy at issue, only the two estates are beneficiaries under the policy. Therefore, only the estates can claim UIM benefits under the policy; we will treat Rowe's argument accordingly.

2. The policy provides that an "[u]nderinsured motor vehicle means a land motor vehicle or trailer of any type to which a liability bond or policy applies at the time of the accident but its limit for bodily injury is less than the limit of liability for this coverage."

3. Total payments to the claimants were limited to the per-accident limit of $100,000.

by the liability insurer of the party recovered against.

This statute has been referred to as a "difference of the limits statute." *Nickerson v. American States Ins.,* 2000 SD 121, ¶ 10, 616 N.W.2d 468, 470 (citing *Farmland Ins. Co. v. Heitmann,* 498 N.W.2d 620, 625 (S.D.1993)). Under this statutory language, we merely compare the limits of the UIM coverage with the amount paid by the liability insurer. When the amount recovered equals or exceeds the limits of UIM coverage, no UIM benefits are payable. *See Friesz v. Farm & City Ins.,* 2000 SD 152, ¶ 11, 619 N.W.2d 677, 680; *Nickerson, supra; Great West Cas. Co. v. Hovaldt,* 1999 SD ·150, ¶ 11, 603 N.W.2d 198, 201; *Heitmann, supra.*

[¶ 9.] However, neither SDCL 58–11–9.5 nor our prior case law controls the disposition of a case, such as this one, where more than one named insured or "party" would be entitled to recovery under the policy. The statute provides that coverage is limited to the UIM coverage limits "of the party recovering." This language anticipates the situation where more than one party is entitled to recover under the policy, and implies that the "difference of limits" standard applies individually to each party entitled to recover. Both Robert and Rita were listed as named insureds under this policy. Therefore, each could be entitled to recover under the provisions of the policy, including UIM coverage, and the difference of the limits statute would apply to Robert and Rita individually. Our previous UIM decisions involved single claimants attempting to, in essence, "stack" policies. Such attempts were clearly prohibited by SDCL 58–11–9.5 *See Friesz, Nickerson, Hovaldt,* and *Heitmann, supra.* Here, however, the estates of Robert and Rita are both named insureds entitled to recover under the policy. The policies are not being "stacked," rather they stand side-by-side. Therefore, SDCL 58–11–9.5 by itself does not preclude Rowe's claims. Nevertheless, this does not resolve the issue, as the effect of the statute on the issue depends on the language of the policy.

[¶ 10.] The provisions of SDCL 58–11–9.5 provide that an insurance company's duty to pay UIM benefits is "[s]ubject to the terms and conditions of such underinsured motorist coverage...." Therefore, we must examine the terms and conditions of the Westfield policy. The relevant and dispositive provision reads as follows:

> The limit of liability shown in the Declarations for Coverage J[4] is our maximum limit of liability for all damage resulting from any one-auto accident. This is the most we will pay regardless of the number of:
>
> a.  Insureds;
>
> b.  claims made;
>
> c.  vehicles or premiums shown in the Declarations; or
>
> d.  vehicles involved in the accident.
>
> However, the limit of liability shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible.

By the terms of the policy, Westfield limits its total liability to $500,000 per accident *"regardless of the number of insureds [or] claims made...."* In contrast, the policy in *Austin Mutual* provided a maximum limit of $100,000. However, the Eighth Circuit Court of Appeals placed great weight upon the fact that under the terms of the policy, coverage was " 'subject to

---

4.  Coverage J under the policy is Underinsured Motorist Coverage. The limit of liability shown in the Declarations in $500,000.

this limit for each *person,*' rather than 'subject to this limit for each *accident.*'" 29 F.3d at 388 (emphasis in original). For that reason, the court examined each UIM claim individually. *Id.* at 389. Here the policy clearly limits Westfield's liability to $500,000 for each accident. The policy language at issue mandates a different result in this case.

[¶ 11.] The Westfield policy is more similar to that examined in *Union Ins. Co. v. Houtz,* 883 P.2d 1057 (Colo.1994). In that case, two insureds, Houtz and Etheridge, were injured in a traffic accident. Houtz recovered $127,500 from the tortfeasor's liability carrier and Etheridge received $112,500, for a total of $240,000. They filed a claim under Houtz' Union policy for UIM benefits. Houtz' policy limits were $100,000 per person, $300,000 per accident. The insureds sought $172,500 for Houtz ($300,000 minus $127,500), and $187,500 for Etheridge ($300,000 minus $112,5000). Union claimed Houtz and Etheridge were only entitled to $60,000 ($300,000 minus $240,000). Houtz' policy contained the following provision: *"[e]xcept with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or 'suit' is brought."* *Id.* at 1061–62 *(emphasis in original).* The Limit of Insurance provided:

> Regardless of the number of covered "autos," "insureds," premiums paid, claims made or vehicles involved in the "accident," the most we will pay for all damages resulting from any one "accident" is the least of the following:
> a. The LIMIT OF INSURANCE for UNINSURED MOTORISTS COVERAGE shown in the Declarations [$100,000/$300,000].
> b. The difference between the limit of this insurance and all amounts paid

to an "insured" by of for anyone legally liable for damages resulting from "bodily injury".... *Id.* at 1060. As noted by the court, coverage under the policy applied separately *"except with respect to the Limit of Insurance.* The corollary to this language is that the limit of liability does not apply separately to each injured insured, but applies to the accident." *Id.* at 1062 (emphasis in original). Because the UIM policy limits applied to the accident and not the individual insured, Union was allowed to offset all monies received by the insureds involved in the accident ($240,000) and the insureds were only entitled to $60,000 in UIM benefits. *Id.* at 1063; *See Nickerson,* 2000 SD 121, ¶ 12, 616 N.W.2d at 471 (noting that "all monies received from the tortfeasor" are deducted from the UIM policy limits).

[¶ 12.] Like the policy in *Houtz,* the Westfield policy limits clearly apply to the accident. In addition, under the terms of its UIM coverage, Westfield is entitled to an offset of "all sums paid ... by or on behalf of persons or organizations who may be legally responsible," regardless of the number of insureds or claims made. Rowe received a total of $750,000 from the party legally responsible for the accident. The limit of liability under the Westfield policy is $500,000. Therefore, the estates are not "underinsured" under the policy and Rowe is not entitled to UIM benefits.

[¶ 13.] **2. Whether Westfield is entitled to subrogation.**

[¶ 14.] Westfield paid Rowe $144,660.69 to cover property damage from the accident. At that time, Westfield requested reimbursement if Rowe received any payments from the tortfeasor. After Rowe received the $750,000 settlement from Great West, Westfield requested subrogation for the amount previously paid. Rowe argues that Westfield is not entitled to subrogation because they have not been

made whole, as the damages suffered exceeded the $750,000 settlement.

[¶ 15.] We recognized in *Julson v. Federated Mut. Ins. Co.*, 1997 SD 43, ¶ 12, 562 N.W.2d 117, 121, that subrogation rights may arise independent of the common law "made whole" doctrine. In *Julson,* the insurance policy specifically provided the right of subrogation, without any requirement that the insured be made whole. *Id.* Likewise, Westfield's policy provides:

> If we make a payment under this policy and:
>
> a. The person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right . . .
>
> b. The person to or for whom payment is made recovers damages from another, that person shall: (1) hold in trust for us the proceeds of the recovery and (2) reimburse us to the extent of our payment.

Rowe can point to no language in the policy or statutory authority which restricts this right of subrogation to instances where the insured has been made whole. Therefore, Westfield is entitled to reimbursement of the $144,660.69 it paid to Rowe.

[¶ 16.] We affirm the trial court on both issues.

[¶ 17.] MILLER, Chief Justice, and SABERS, AMUNDSON, and KONENKAMP, Justices, concur.