2005 SD 30

**Michael GLOE, Plaintiff and Appellee,**

**v.**

**UNION INSURANCE COMPANY, Defendant and Appellant.**

**No. 23144.**

Supreme Court of South Dakota.

Argued Oct. 6, 2004.

Decided March 2, 2005.

254

Nancy J. Turbak, Watertown, SD, for plaintiff and appellee.

Paul H. Linde of Schaffer Law Office, Sioux Falls, SD, for defendant and appellant.

GILBERTSON, Chief Justice.

[¶ 1.] Michael Gloe's parents were struck and killed by an automobile driven by Donald Huber. Gloe did not reside in his parents' household, nor was he physically present at or injured as a result of the accident. Gloe and his two siblings received a total of $125,000 for the wrongful death claims arising from their father's death and $125,000 for their mother's death from two insurers who provided liability coverage for the accident. Gloe sought underinsurance benefits under his parents' Union policy. The trial court entered a declaratory judgment in favor of Gloe, holding Gloe was legally entitled to recover wrongful death damages from the operator and the owner of an underinsured motor vehicle because of the death of his parents. The trial court concluded Union was obligated to pay Gloe for his damages subject to the applicable limit of the underinsured motorist coverage. The trial court held Union's UIM limit of liability was to be determined by subtracting the amount of liability insurance proceeds received by Gloe after allocation among all wrongful death beneficiaries, rather than the entire amount paid by the liability carriers on behalf of the tortfeasor. Reversed.

## FACTS AND PROCEDURE

[¶ 2.] For purposes of the declaratory action, Gloe and Union stipulated and agreed to the following facts: On September 1, 2001, pedestrians Larry and Verna Mae Gloe were struck and killed by a van

driven by Donald Huber in Watertown, South Dakota. Each of the three surviving adult children, Scott Gloe,[1] Karen Nelson,[2] and Michael Gloe, asserted wrongful death claims against the van driver for the deaths of Larry and Verna Mae. In exchange for the release of all claims against Huber and the owner of the van[3] arising from the deaths, two liability insurers[4] together paid a total of $125,000 to the personal representative of Larry and $125,000 to the personal representative of Verna Mae for the wrongful death claims filed by their personal representative.[5] The settlements exhausted the liability coverage available under the two policies. The three adult children were the statutory beneficiaries entitled to those wrongful death proceeds. Each child received $41,583 for the death of their father and $40,611 for the death of their mother. The estates released the tortfeasor as a part of the settlement.

[¶ 3.] Gloe brought this claim for underinsured motorist (UIM) benefits against Union, his parents' insurance carrier. This action was brought in Gloe's individual capacity, rather than by the personal representative of his parents' estates on behalf of the statutory beneficiaries.[6] The Union policy provided UIM coverage with limits of $100,000 per person and $300,000 per occurrence. Gloe conceded that the $41,583 he received for the wrongful death of his father and the $40,611 he received for the wrongful death of his mother were proper liability coverage amounts to setoff from the $100,000 UIM per person limit.

[¶ 4.] Union denied Gloe's claim maintaining that no UIM benefits were available to Gloe under his parents' insurance contract, as a single $100,000 per person limit applied to Larry's death, and another $100,000 per person limit applied to Verna Mae's death. Union further argued that both SDCL 58–11–9.5 and the contract language allowed Union to setoff the entire $125,000 of liability proceeds paid on behalf of the tortfeasor to Verna Mae's personal representative against the single $100,000 per person UIM coverage limit available as a result of her death. Union argued the same single per person limit

1. In our decision in *Gloe v. Iowa Mut. Ins. Co.*, 2005 SD 29, 694 N.W.2d 238, (*Gloe II*) we held South Dakota statutes do not require an insurer to provide underinsured coverage for damages arising from the bodily injury or death of a third person.

2. We considered this same accident originally in *Nelson v. Farmers Mut. Ins. Co. of Nebraska*, 2004 SD 86, 684 N.W.2d 74. Karen Nelson's underinsured claim was made in her individual capacity, and was not contested by her insurer, Farmers Mutual. *Id.* ¶ 2. Therefore we only interpreted the extent of Farmers Mutual's underinsured limits. *Id.*

3. Hereinafter the $125,00 in liability payments paid by the Huber's liability carrier and the van owner's liability carrier will be referenced as payment by the "tortfeasor's liability carriers."

4. Two insurers provided liability coverage for the accident. American Family Insurance Company insured the owner of the van with a liability limit of $25,000, and Farmer's Insur-

ance Group insured the driver of the van with a liability limit of $100,000.

5. In rendering our decision in *Nelson*, 2004 SD 86, 684 N.W.2d 74, the amount of UIM coverage available under Nelson's policy was $100,000. The portion of the $125,000 liability insurance proceeds she received was set off against that amount. Unlike the instant case, the insurer in *Nelson* did not contest the use of only the liability insurance proceeds received by Nelson as the set off amount.

6. In the recently released opinion in *In re Estate of Howe*, this Court held the personal representative of the estate must bring wrongful death tort claims on behalf of all statutory beneficiaries under SDCL 21–5–5. 2004 SD 118, 689 N.W.2d 22. However, both *In re Estate of Howe* and the case that it interpreted, *Sander v. Geib, Elston, Frost Prof'l Ass'n*, 506 N.W.2d 107 (S.D.1993), involved wrongful death actions against a tortfeasor. The present case is a declaratory action in contract, not a wrongful death action in tort.

and setoff applied to the coverage for Larry's death. Under Union's approach, UIM coverage would be exhausted and no payment would result.

[¶ 5.] The trial court entered a declaratory judgment in favor of Gloe, holding Gloe was an insured under the policy language, and was legally entitled to recover wrongful death damages from the operator of the underinsured motor vehicle due to the deaths of his parents. The trial court concluded Union was obligated to pay Gloe for his damages subject to the applicable per person UIM limit of $100,000. The trial court also held Union's limit of liability was to be determined by subtracting the amount of liability proceeds received by Gloe, rather than by subtracting the total amount of liability insurance paid on behalf of the tortfeasor for each death.

[¶ 6.] Union appealed two issues:

1. Whether the trial court erred when it determined that under South Dakota statutes UIM benefits were available after the amount paid by the liability insurance carriers on behalf of the tortfeasor exceeded the limits of Union's underinsured motorist coverage.

2. Whether the trial court erred when it held UIM benefits were available to Michael Gloe under the language of Union's policy.

## STANDARD OF REVIEW

[¶ 7.] Under SDCL 21-24-13, a declaratory judgment is reviewed by this Court as we would any other judgment or order. *Nelson v. Farmers Mut. Ins. Co. of Nebraska*, 2004 SD 86, ¶ 5, 684 N.W.2d 74, 76 (citing SDCL 21-24-13; *Parks v. Cooper*, 2004 SD 27, ¶ 20, 676 N.W.2d 823, 828-29). The trial court's interpretation and application of relevant statutes are reviewed under the de novo standard, and given no deference by this Court. *West-*

*field Ins. Co., Inc. v. Rowe*, 2001 SD 87, ¶ 4, 631 N.W.2d 175, 176 (citing *Maryott v. First Nat'l, Bank of Eden*, 2001 SD 43, ¶ 17, 624 N.W.2d 96, 102).

[¶ 8.] We use statutory construction to discover the true intent of the legislature in enacting the law, which is ascertained primarily from the language used in the statute. *State v. Myrl & Roy's Paving, Inc.*, 2004 SD 98, ¶ 6, 686 N.W.2d 651, 653-54 (citing *Martinmaas v. Engelmann*, 2000 SD 85, ¶ 49, 612 N.W.2d 600, 611). We confine ourselves to the language used by the legislature in order to determine what the legislature said, rather than what the courts think it should have said. *Id.* In doing so, we must attempt to give words their plain meaning and effect, and read statutes as a whole, as well as enactments relating to the same subject. *State v. I-90 Truck Haven Service, Inc.*, 2003 SD 51, ¶ 3, 662 N.W.2d 288, 290 (citing *Martinmaas*, 2000 SD 85, ¶ 49, 612 N.W.2d at 611).

[¶ 9.] In addition, "[w]hen interpreting insurance contracts, we have uniformly held them reviewable as a matter of law under the de novo standard." *Opperman v. Heritage Mut. Ins. Co.*, 1997 SD 85, ¶ 3, 566 N.W.2d 487, 489 (citing *DeSmet Ins. Co. v. Gibson*, 1996 SD 102, ¶ 5, 552 N.W.2d 98, 99) (citations omitted). "This includes determining whether an insurance contract is ambiguous." *Id.* (citing *Rogers v. Allied Mut. Ins. Co.*, 520 N.W.2d 614, 616 (S.D.1994)).

## ANALYSIS AND DECISION

[¶ 10.] 1. **Whether the trial court erred when it determined that under South Dakota statutes UIM benefits were available after the amount paid by liability insurance carriers on behalf of the tortfeasor**

**exceeded the limits of Union's underinsured motorist coverage.**

[¶ 11.] Under SDCL 58–11–9.4, automobile insurance providers are required to furnish UIM coverage in their policies. *Nelson*, 2004 SD 86, ¶ 8, 684 N.W.2d 74, 77. SDCL 58–11–9.4 provides in relevant part:

the coverage required by this section may not exceed the limits of one hundred thousand dollars because of bodily injury to or death of one person in any one accident and, subject to the limit for one person, three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident, unless additional coverage is requested by the insured.

[¶ 12.] The purpose of the UIM statutory scheme is to provide protection to insured motorists against underinsured motorists. *Farmland Ins. Companies of Des Moines, Iowa v. Heitmann*, 498 N.W.2d 620, 624 (S.D.1993) (citing *Union Ins. Co. v. Stanage*, 454 N.W.2d 736, 739 (S.D.1990)). The UIM statutory scheme reflects a legislative determination that the maximum amount set forth in the statute is sufficient to protect insured motorists from underinsured motorist, as the clear intent of the legislature was to limit the amount recovered under UIM to those maximums absent a request for additional coverage. *Id.* at 625; *Union Ins. Co.*, 454 N.W.2d at 739.

[¶ 13.] The language of the UIM statutory scheme further limits recovery to the difference between the payments made by the liability carriers of the tortfeasor and the UIM per person and per accident limits. SDCL 58–11–9.5; *Nickerson v. American States Ins.*, 2000 SD 121, ¶ 18, 616 N.W.2d 468, 472–73. The goal of the statutory scheme is to ensure that a recovery is made by an insured who incurs bodily injury of at the very least, an

amount equal to the statutory UIM coverage limits. *Id.* ¶ 15. "[T]he insured who contracts for UIM coverage is contracting for the assurance that he will be able to recover, at a minimum, an amount equal to the UIM coverage." *Id.* (holding to do "otherwise would be to force the UIM carrier to be contractually liable to indemnify its insured for the coverage amount regardless of the amount recovered from the tortfeasor[.]").

[¶ 14.] We have referred to SDCL 58–11–9.5 as a "difference of the limits" statute. *Farmland Ins. Companies of Des Moines, Iowa*, 498 N.W.2d at 625. SDCL 58–11–9.5 provides:

Subject to the terms and conditions of such underinsured motorist coverage, the insurance company agrees to pay its own insured for uncompensated damages as its insured may recover on account of bodily injury or death arising out of an automobile accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon. Coverage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering *less the amount paid by the liability insurer of the party recovered against.*

(emphasis added).

[¶ 15.] Under the statutory scheme, we compare the limits of the UIM coverage with the amount paid by the liability carrier. *Westfield Ins. Co., Inc.*, 2001 SD 87, ¶ 8, 631 N.W.2d at 177–78 (citing *Friesz v. Farm & City Ins.*, 2000 SD 152, ¶ 11, 619 N.W.2d 677, 680; *Nickerson*, 2000 SD 121, ¶ 16, 616 N.W.2d at 472; *Great West Cas. Co. v. Hovaldt*, 1999 SD 150, ¶ 11, 603 N.W.2d 198, 201; *Farmland Ins. Companies of Des Moines, Iowa*, 498 N.W.2d at 624). If the amount paid by the liability carrier on behalf of the tort-

feasor "equals or exceeds the limits of the UIM coverage, no UIM benefits are payable." *Id.* The South Dakota statutory scheme prohibits a double recovery, and will not permit an insured to collect UIM benefits without first deducting the amount paid by the tortfeasor's liability carrier. *Nickerson*, 2000 SD 121, ¶ 16, 616 N.W.2d at 472 (citing *Great West Cas. Co.*, 1999 SD 150, ¶ 10, 603 N.W.2d at 201). The exception to this rule is when two or more insureds incur separate bodily injuries as a result of one motor vehicle accident. *Winters v. Northwestern Nat. Cas. Co.*, 838 F.Supp. 440, 444 (D.S.D.1993); *Westfield Ins. Co., Inc.*, 2001 SD 87, ¶ 9, 631 N.W.2d at 178. In such cases, the liability proceeds paid by the tortfeasor's liability carrier for insured A's injuries are used to determine the difference of the limit only for insured A, while the liability proceeds paid by the tortfeasor's liability carrier for insured B's injuries are used only to determine the difference of the limit for insured B. *See Id.*; *Winters*, 838 F.Supp. at 442–43.

[¶ 16.] We held in *Westfield* that the language of SDCL 58–11–9.5 does not prohibit UIM recovery by two claimants standing side-by-side, when the claimants are both *named insureds* and the policy language permits it. *Id.* ¶ 9, 631 N.W.2d at 178. We noted the language of the statute implies "that the 'difference of the limits' standard applies individually to each party entitled to recover." *Id.* However, in that case both parties were entitled to recover because both incurred bodily injury in the accident.[7] *Id.* ¶ 2, 631 N.W.2d at 176.

[¶ 17.] Similarly in *Winters*, a motorist and his passenger each incurred bodily injury while riding in the same car as a result of the negligence of another motorist. 838 F.Supp. at 441. Each victim received $200,000 in liability proceeds from the tortfeasor's liability carriers, but each victim had uncompensated damages above that amount. *Id.* at 442. Both victims had separate insurance policies under which they sought to make UIM claims, with UIM coverage limits of $300,000. *Id.* at 441. The UIM insurer for the owner of the car in which the victims were riding attempted to setoff the entire $400,000 in liability proceeds paid to both victims, by aggregating the $200,000 each received on behalf of the tortfeasor as one amount. *Id.* at 442–43. The insurer argued that the liability proceeds of $400,000 for the entire accident were in excess of its $300,000 per accident limit, and therefore the tortfeasor was not underinsured and no UIM recovery was available. *Id.*

[¶ 18.] The *Winters* court held that each victim was entitled to a separately calculated setoff and a separate per person limit rather than a single per accident limit and a jointly calculated setoff. *Id.* at 444. The driver's setoff included only the $200,000 in proceeds paid by the tortfeasors' liability carriers for the driver's injuries, and the passenger's setoff included only the $200,000 in liability proceeds paid by the tortfeasors' liability carriers for passenger's injuries. *Id.* Under this inter-

7. In *Westfield Ins. Co., Inc., v. Rowe*, the personal representative of two deceased named insureds made claims against the tortfeasor's liability carrier and received $750,000 in total, or $375,000 for each estate. 2001 SD 87, ¶ 3, 631 N.W.2d 175, 176. However, the two named insureds both incurred bodily injury, that is death, as a result of the tortfeasor's negligence. *Id.* ¶ 2. The personal representative then made a claim against the decedents' underinsured motorist coverage. *Id.* ¶ 3. The policy provided a single limit of $500,000 per accident rather than differentiating between a "per person" and "per accident" limit. *Id.* The policy language controlled and only one recovery under the per accident limit was permitted. *Id.* ¶ 11, 631 N.W.2d at 179.

pretation, that court reasoned each victim would receive the maximum UIM recovery intended by the legislature, the difference between the limits of the tortfeasor's liability coverage and the amount each victim contracted to receive under their respective policies. *Id.* The end result, $100,000 in UIM coverage was available to each insured who incurred bodily injury under their respective policies. *Id.*

[¶ 19.] In the instant case, only Verna Mae and Larry incurred bodily injury or death as a result of the motor vehicle accident. There is no dispute between the parties that only one per person limit of $100,000 in UIM coverage is available for the death of Verna Mae, and a separate per person limit of $100,000 in UIM coverage is available for the death of Larry. Both parties also agree that because no other bodily injury or death occurred, the remaining balance of the $300,000 per accident limit is unavailable.

[¶ 20.] Verna Mae and Larry each contracted to receive a $100,000 UIM per person limit less the statutory setoff of the amount paid *"by the liability insurer of the party recovered against"* as a consequence of their deaths. However, no claim for UIM benefits has been made by the personal representative of Verna Mae and Larry under a wrongful death action. If such claims were made by the personal representative, the mandatory setoff would result in no UIM benefits payable, as the liability carriers have paid $125,000 for each decedent to the three Gloe children, who would also be the beneficiaries in a wrongful death action, an amount sufficient to setoff the entire $100,000 of UIM coverage contracted for by the decedents.

[¶ 21.] Union argues the trial court erred when it held the proper setoff amount should include only the portion of the liability proceeds ultimately received by Gloe, rather than all the liability proceeds paid on behalf of the tortfeasor. Union argues that the statutory language in SDCL 58–11–9.5 results in a setoff of the entire amount paid *"by the liability insurer of the party recovered against."* Union's argument focuses on the lack of a bodily injury to Gloe, whose right of recovery is based on his status as a statutory beneficiary under South Dakota's wrongful death statute.

[¶ 22.] Gloe, however, argues that the language of the SDCL 58–11–9.5 is unclear as it fails to adequately define the mandatory setoff. Gloe argues that while the language does require a deduction of "the amount paid by the liability insurer," it fails to specify to whom the amounts have to have been paid in order to be relevant for purposes of the setoff. Gloe argues that under *Westfield* and *Winters,* he is required to setoff only the $41,583 he received for the wrongful death of Larry and the $40,611 he received for the wrongful death of Verna Mae, instead of the full amount paid by the liability carriers for the wrongful deaths. Gloe advances an argument that he should be required to setoff only those amounts *paid to* him as a statutory beneficiary, because he has suffered an individual *legal injury* as a result of the motor vehicle accident and no other insured has made a UIM claim.

[¶ 23.] Gloe argues this Court should look to the intent behind the UIM statutory scheme for support for the proposition that Gloe should have to deduct only the liability proceeds received by him in calculating the setoff. Gloe's argument hinges on one statement in *Winters,* 838 F.Supp. at 443, taken out of context, where that court noted the legislative intent of SDCL 58–11–9.5 is to provide "an insured with maximum coverage."

[¶ 24.] The intent of the UIM statutory scheme is not to provide an in-

sured with maximum coverage, but rather to protect insured motorists from underinsured motorists by requiring that insurers pay the insured the *maximum UIM recovery intended by the legislature.* *Nickerson*, 2000 SD 121, ¶ 15, 616 N.W.2d at 471 (citing *Stanage*, 454 N.W.2d at 739). That maximum recovery being the difference between the limits of the tortfeasor's liability coverage and the statutory $100,000/$300,000 UIM limits, or the amount in excess of the statutory limits an injured insured motorist contracted to receive under his or her insurance policy. *Id.*

[¶ 25.] Thus, Gloe's argument fails under the language in SDCL 58–11–9.5. An UIM carrier is entitled to a one time setoff of *all* liability proceeds paid *by* the tortfeasor's liability carriers. SDCL 58–11–9.5. We assume "statutes mean what they say and that legislators have said what they meant." *Farmland Ins. Companies of Des Moines, Iowa*, 498 N.W.2d at 624–625 (citing *In re Famous Brands, Inc.*, 347 N.W.2d 882, 885 (S.D. 1984) (citing *Crescent Electric Supply Co. v. Nerison*, 89 S.D. 203, 210, 232 N.W.2d 76, 80 (S.D.1975))).

[¶ 26.] In this case the amount against which to setoff the liability proceeds is the $100,000 of UIM coverage available for the wrongful death of Verna Mae and the $100,000 of UIM coverage available for the wrongful death Larry. If we allow Gloe to reduce the setoff to just that portion of the liability proceeds he received, Union is unable to deduct the full balance of the liability proceeds paid by the tortfeasor's liability insurers as permitted under SDCL 58–11–9.5.

[¶ 27.] Furthermore, Verna Mae and Larry's statutory beneficiaries received $125,000 in liability proceeds paid by the tortfeasor's liability carriers. Union is therefore entitled to deduct the entire $125,000 in wrongful death damages paid by the tortfeasor's liability carriers from the $100,000 in UIM coverage available for the wrongful death of Verna Mae, and to do the same with regard to Larry. Once the statutory deduction permitted under SDCL 58–11–9.5 is applied, the statutory beneficiaries have received more in liability proceeds than is available in UIM coverage. Therefore, under the facts of this case, UIM coverage is exhausted and no UIM coverage is available under the decedents' policy against which Gloe may make his additional, individual claim.

[¶ 28.] **2. Whether the trial court erred when it held UIM benefits were available to Michael Gloe under the language of Union's policy.**

[¶ 29.] SDCL 58–11–9.5 provides that an insurer's duty to pay UIM benefits is "[s]ubject to the terms and conditions of such underinsured motorist coverage. . . ." In order to ascertain the terms and conditions of a contract, we must examine the contract as a whole and give words their "plain and ordinary meaning." *Elrod v. General Cas. Co. of Wisconsin*, 1997 SD 90, ¶ 15, 566 N.W.2d 482, 486 (citing *Alverson v. Northwestern Nat'l. Cas. Co.*, 1997 SD 9, ¶ 8, 559 N.W.2d 234, 236 (quoting *St. Paul Fire & Marine Ins. Co. v. Schilling*, 520 N.W.2d 884, 887 (S.D. 1994))). We will not resort to a forced construction of the language in a contract for the purpose of either limiting or extending coverage. *Farm & City Ins. v. Estate of Davis*, 2001 SD 71, ¶ 6, 629 N.W.2d 586, 587 (citing *Prokop v. North Star Mut. Ins. Co.*, 457 N.W.2d 862, 864 (S.D.1990) (quoting *Cheney v. Metropolitan Life Ins. Co.*, 370 N.W.2d 569, 573 (S.D.1985))).

[¶ 30.] Language in an insurance contract is ambiguous when it "is fairly susceptible to two constructions." *National Sun Industries, Inc. v. South*

*Dakota Farm Bureau Ins. Co.,* 1999 SD 63, ¶ 18, 596 N.W.2d 45, 48 (citing *Economic Aero Club v. Avemco Ins. Co.,* 540 N.W.2d 644, 645 (S.D.1995) (quoting *American Family Mut. Ins. v. Elliot,* 523 N.W.2d 100, 102 (S.D.1994))). Ambiguity will not be created merely by one party offering a different interpretation of the contract language. *Alverson,* 1997 SD 9, ¶ 8, 559 N.W.2d at 235–36 (citing *Johnson v. Johnson,* 291 N.W.2d 776, 778–79 (S.D. 1980)). Ambiguity is "determined with reference to the policy as a whole and the plain meaning and effect of its words." *National Sun,* 1999 SD 63, ¶ 18, 596 N.W.2d at 48. We will not seek out a "strained or unusual meaning for the benefit of the insured." *Id.* (citing *Alverson,* 1997 SD 9, ¶ 8, 559 N.W.2d at 235).

[¶ 31.] The contract language at issue included in the endorsement for UIM coverage provided in relevant part:

INSURING AGREEMENT

B. 'Insured' as used in this endorsement means:

1. You or any 'family member'.

2. Any other person 'occupying' 'your covered auto'.

3. Any person for damages that person is entitled to recover because of 'bodily injury' to which this coverage applies sustained by a person described in 1. or 2. above.

LIMIT OF LIABILITY

A. The limit of liability shown in the Schedule for each person for Underinsured Motorists Coverage is our maximum limit of liability **for all damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident.** Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage **is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.** This is the most we will pay regardless of the number of:

1. "Insureds"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. **The limit of liability shall be reduced by all sums paid because of the "bodily injury"[8] by or on behalf of persons or organizations who may be legally responsible.**

(emphasis added).

[¶ 32.] The policy endorsement reflecting amendments to the policy language specific to South Dakota included the following definition for an underinsured motor vehicle:

VI. Underinsured Motorists Coverage Endorsement

A. The definition of "underinsured motor vehicle":

"Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for "bodily injury" under that bond or policy **to an "insured"** is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

(emphasis added).

[¶ 33.] Union contends that Gloe's legal entitlement to UIM proceeds is made pos-

---

8. "Bodily injury" was defined under the policy as "bodily harm, sickness or disease, including death that results."

sible as a result of Gloe's status as a statutory beneficiary under SDCL 21–5–5.[9] As such, Gloe's claim arises from the deaths of Larry and Verna Mae, as do any potential future claims to UIM proceeds by Scott and Karen. Therefore, Gloe's claim must be subject to the setoff equal to all sums paid "because of the [deaths]" of Verna Mae and Larry by or on behalf of the tortfeasor legally responsible for their deaths as provided in section B of the contract. Union's contention results in a deduction of the full $125,000 of liability proceeds received from the tortfeasor's liability carriers as a result of the deaths of Verna Mae and Larry. Under this scenario, UIM benefits are exhausted and Gloe is unable to recover any UIM proceeds.

[¶ 34.] Gloe argues that the language in section B under Limit of Liability is ambiguous when read in conjunction with the definition of an underinsured motor vehicle under section VI. A. Gloe concedes that section B defines the setoff as "all sums paid ... by or on behalf of persons ... who may be legally responsible." Gloe maintains that this contract language is as unclear as the statutory language in failing to identify to whom the amounts have to have been paid in order to be relevant for purposes of the setoff. *See* supra ¶ 22. Gloe further argues that the language in the definition of an underinsured motorist contained in section VI. A, "but the amount paid for 'bodily injury' under that bond or policy *to an 'insured'* is not enough to pay the full amount the 'insured' is legally entitled to recover as damages," supplies the missing identifier and alters Union's limit of liability so that the setoff includes only those amounts paid to the insured.

[¶ 35.] Gloe emphasizes that it is the definition of an underinsured motor vehicle that creates ambiguity with regard to the proper setoff amount. That language defines an underinsured motor vehicle as one where "the amount paid for 'bodily injury' under that bond or policy *to an 'insured'* is not enough to pay the full amount the 'insured' is. legally entitled to recover as damages." Gloe argues that the language in the definition section, when read together with the language in the limit of liability section, creates ambiguity by providing two different methods of calculating the setoff amount. Gloe attempts to create ambiguity by offering a different interpretation of the contract language. Gloe borrows language from the definition section that defines when another motorist is driving an underinsured motor vehicle, and then uses that language to calculate the setoff amount rather than the language used in the Limit of Liability section.

[¶ 36.] Gloe's argument fails under a plain reading of the contract language. The definition section identifies what conditions must exist so that a person who is legally responsible for the injuries to the insureds may be considered an underinsured motorist, that is what conditions must exist to trigger UIM coverage. The limit of liability section then determines how much in UIM benefits will be forthcoming to an insured once UIM coverage is triggered. Each section serves a different purpose and when read together do not create ambiguity under their respective plain meanings.

[¶ 37.] Under the language of the contract, Union has reserved the right to a one time setoff of *all* liability proceeds "paid by or on behalf of the tortfeasor."

9. SDCL 21–5–5 provides:
Every action for wrongful death shall be for the exclusive benefit of the wife or husband and children, or if there be neither of them, then of the parents and next of kin of the person whose death shall be so caused; and it shall be brought in the name of the personal representative of the deceased person.

There is no language in the contract whereby Union limits its setoff amount to only those proceeds received by an insured.

[¶ 38.] The dissent does not find ambiguity within the contract language, but nonetheless would hold that the proper setoff is the amount received by Gloe rather than the entire $125,000 in liability proceeds paid by the tortfeasor's liability carriers. The dissent acknowledges, as does the Court, that Gloe's status as an insured arises under the third definition.[10] The dissent states "[s]ince the *contract is between the company and the insureds,* the logical interpretation is that the sums must be paid to the *company's insured* before it can be offset." Supra ¶ 52 (emphasis added).

[¶ 39.] However, what the dissent fails to recognize is that Gloe is an insured only by virtue of his status as a wrongful death beneficiary under the third definition in the policy language. The contract was between Union and Verna Mae and Larry, not between Union and Gloe. If the dissent's logic is followed with the understanding that the contract belonged to Verna Mae and Larry rather than Gloe, then the proper setoff is "the sums paid to the company's insured," that is the $125,000 in liability proceeds paid to the personal representative of Verna Mae and Larry because of their deaths. Therefore, the setoff is not limited in this case to the amounts paid to Gloe individually *by the personal representative* of his parents' estates.

[¶ 40.] The dissent also suggests that the fact that the other two siblings, Karen and Scott, did not make claims under their parents' policy is irrelevant to the outcome of this litigation. The dissent does acknowledge that if all three siblings had made claims, then and only then would the sums paid to each sibling be aggregated into one setoff.

■ [¶ 41.] We have previously held that the amount recoverable under UIM coverage is not a matter of timing. *Farmland Ins. Companies of Des Moines, Iowa,* 498 N.W.2d at 625 (holding the insured cannot force his UIM carrier to pay the full UIM coverage amount by claiming the liability proceeds cannot not be used as a setoff under SDCL 58–11–9.5 until the tortfeasor's liability carrier actually makes payment) (citing *Helmbolt v. LeMars Mut. Ins. Co., Inc.,* 404 N.W.2d 55, 59–60 (S.D. 1987) (holding an insurer cannot delay payment of UIM proceeds by requiring a judgment of liability against the tortfeasor as a precondition to payment of UIM proceeds)). We cannot allow insureds to defeat the mandatory setoff under SDCL 58–11–9.5 by timing their claims, and forcing the insurer to calculate the statutory setoff separately for each insured.

[¶ 42.] Despite the fact that the issue was not before the Court, the dissent erroneously theorizes that the aggregated payments received by the siblings would be offset against the $300,000 per accident limit, not the $100,000 per person limit. This is a proposition that Gloe himself has stated in his brief, and repeatedly at oral argument, is incorrect and not permissible under current South Dakota law. The language of the policy makes it clear that the $100,000 limit is the maximum the insurer will pay "for all damages for care, loss of services or *death,* arising out of 'bodily injury' sustained by any one person in any one accident." If we were to follow the dissent's logic on this issue, we would ef-

---

**10.** Union does not dispute Gloe's status as a beneficiary under the third definition in the policy.

fectively overrule *Rogers,* 520 N.W.2d 614, which does not permit the recovery to exceed a contractually imposed single per person limit of liability when bodily injury or death has been suffered by only one insured, regardless of the number of claims or insureds making claims because of the single bodily injury or death suffered by one insured.

[¶ 43.] We hold the correct setoff amount in this case is that amount paid by the tortfeasor's liability carriers because of the death incurred by the insureds Verna Mae and Larry. The amount against which to setoff the liability proceeds is the $100,000 in UIM coverage available for Verna Mae and the $100,000 in UIM coverage available for Larry. For each of the decedents, the amount paid by the tortfeasor's liability carriers because of the insureds' deaths exceeds the available UIM coverage. Therefore, no UIM benefits are payable under the contract.

[¶ 44.] Reversed.

[¶ 45.] KONENKAMP and ZINTER, Justices, concur.

[¶ 46.] SABERS and MEIERHENRY, Justices, dissent.

MEIERHENRY, Justice (dissenting).

[¶ 47.] I respectfully dissent.

*Statutory Provisions*

[¶ 48.] The language of SDCL 58–11–9.5 does not allow an insurance carrier to aggregate the total amount paid to third parties by or on behalf of the tortfeasor as an offset for amounts owed to its own individual insured. The language of the statute is as follows:

> Subject to the terms and conditions of such underinsured motorist coverage, the insurance company agrees to pay its own insured for uncompensated damages as its insured may recover on account of bodily injury or death arising out of an automobile accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon. Coverage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering less the amount paid by the liability insurer of the party recovered against.

*Id.*

[¶ 49.] The first sentence of the statute requires the insurance company to pay its own insured, in this case Michael Gloe, uncompensated damages for the death of his parents. The second sentence then limits the coverage "to the underinsured motorist coverage limits on the vehicle of the party recovering." Here, the limit is $100,000 for the damages sustained by each insured, and $300,000 for the damages resulting from each accident. The statute further allows the recovery to be reduced by "the amount paid by the liability insurer of the party recovered against." It is the application of this last clause of the statute where I disagree with the majority opinion. This clause relates to the general subject of the statute defining the duty of the insurance company to its own insured. The public policy embodied in this legislation is that if a person is injured by an insured motorist but is not fully compensated for his injuries, his own insurance company will pay him up to $100,000. It would be contrary to public policy for us to allow the insurance company to avoid its agreement by reducing the amount it owes to its own insured with money that the tortfeasor's company paid to other individuals.

[¶ 50.] The trial court correctly applied the statute by allowing Union to reduce the amount it owed to Michael Gloe only by the amount the insured motorist's company had paid to Michael Gloe. Aggregat-

ing all sums paid by the insured motorist's company was not allowed. Therefore, only those amounts paid by the tortfeasor's insurance company to Michael Gloe individually, i.e. $41,583 for father's death and $40,611 for mother's death, were allowed as a setoff against the $100,000 coverage for each corresponding death claim.[11]

*Insurance Policy Provisions*

[¶ 51.] The statute defines the relationship between the insurance company and its insured. The language of the insurance policy does also. The insurance policy includes an endorsement specific to the South Dakota law. The policy language limits its liability to $100,000 "for each person for Underinsured Motorists Coverage ... for damages for care, loss of services or death, arising out of 'bodily injury' sustained by any one person in any one accident" and $300,000 for one accident. The policy clarifies further that "[t]his is the most [it] will pay regardless of the number of: 1. 'Insureds'; 2. Claims made; 3. Vehicles or premiums shown in the Declarations; or 4. Vehicles involved in the accident." In this case, only one insured claims under the policy. No amount has been paid to anyone under Union's policy.

[¶ 52.] Union's policy also provides for a setoff against the liability limits. It provides: "The limit of liability shall be reduced by all sums paid because of "bodily injury" [i.e. death] by or on behalf of persons or organizations who may be legally responsible." The majority relies heavily on this portion of the contract to conclude that sums paid to third parties by those legally responsible can be aggregated as a setoff to what it owes its own insured. Yet the language of the contract does not say this. Much like the statutory language, it does not specify to whom the sums must be paid before the offset can be taken. Since the contract is between the company and the insureds, the logical interpretation is that the sums must be paid to the company's insured before it can be offset.

[¶ 53.] In this case, the injured insured parties were the deceased Gloes' children individually. However, only Michael made a claim under his parent's policy. The injured parties and only persons legally entitled to recover for the deaths in this case were the children. Neither the decedents nor their estates received anything from the wrongful death claim. Michael received only a portion of the proceeds. Logically, only what he has received should offset his claim, not the entire amount paid in the wrongful death settlement. Although the other siblings may have been insureds under the policy, they have not made claims to Union. Consequently, the amounts they received have no bearing on Michael Gloe's individual claim under this policy. Had the other siblings made claims under this policy, it would be appropriate to aggregate the sums paid to all of them as a setoff against the $300,000 per accident limit.[12] Such is not the case before us.

11. The trial court determined that Michael Gloe was to receive two per person $100,000 limits, one for each deceased parent. Union Mutual does not raise on appeal the issue of whether Michael is entitled to make a claim for each death or whether he is limited to one claim for both.

12. This interpretation would not necessarily overrule *Rogers* as the majority claims. *See* Supra ¶ 42. *Rogers* did not involve a wrongful death claim, the unique nature of which has given rise to this dispute, and is therefore easily distinguishable from the case at hand. Additionally, this interpretation of the statutes eliminates the majority's concern that timing the claim can defeat the setoff. Since there are three injured wrongful death beneficiaries, there is still $100,000 available to each after their claims are aggregated and setoff against the $300,000 per accident limit. For this reason, there is no danger that the timing of the claims will result in increased recovery.

*Conclusion*

[¶ 54.] The underlying policy of the underinsurance law is to provide an injured person up to $100,000 for uncompensated damages. The Gloes paid premiums for this coverage. To allow Union to offset its only claim with money paid to third parties by or on behalf of the tortfeasor is contrary to public policy and the language of Union's policy and effectively leaves the insured without the coverage purchased.

[¶ 55.] I would affirm the trial court.

[¶ 56.] SABERS, Justice, joins this dissent.

Whether the claims are made individually and independently, or all at the same time, each injured wrongful death beneficiary would have $100,000 available, subject to a setoff of the amount each insured beneficiary has already received.