#25220, #25234-rev & rem-JKM

**2010 SD 1**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

EAGLE RIDGE ESTATES
HOMEOWNERS ASSOCIATION,
INC.,                                                    Plaintiff and Appellee,

   v.

TERRY MITCHELL ANDERSON a/k/a
TERRY M. ANDERSON; ANN CAROL
ANDERSON a/k/a ANN C. ANDERSON;
and TRUST OF TERRY MITCHELL
ANDERSON AND ANN CAROL ANDERSON
DATED APRIL 8, 2005,                      Defendants and Appellants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE WARREN G. JOHNSON
Judge

\* \* \* \*

DYLAN A. WILDE
THOMAS E. BRADY of
Brady & Pluimer, PC                          Attorneys for plaintiff
Spearfish, South Dakota                      and appellee.

RODNEY SCHLAUGER
GREGORY J. ERLANDSON of
Bangs, McCullen, Butler,
  Foye and Simmons, LLP                      Attorneys for defendants
Rapid City, South Dakota                     and appellants.

\* \* \* \*

CONSIDERED ON BRIEFS
ON NOVEMBER 16, 2009

OPINION FILED **01/06/10**

#25220, #25234

MEIERHENRY, Justice

[¶1.]      This case involves a dispute concerning the amount Terry and Ann Anderson (Andersons) owe to Eagle Ridge Estates Homeowners Association, Inc. (Homeowners Association) pursuant to a private access easement agreement. The circuit court granted summary judgment to Homeowners Association. Andersons appeal. We reverse.

## FACTS AND BACKGROUND

[¶2.]      Andersons own three lots in Lawrence County, South Dakota, in a subdivision known as Eagle Crest.[1] Access to Andersons' property is by way of roads running through an adjacent subdivision known as Eagle Ridge Estates. By written agreement, the prior owners of Eagle Ridge Estates subdivision granted a private access easement to Andersons' predecessor. The private access easement operated as a covenant running with the land and bound and inured to the benefit of "successors in title." In exchange for the access easement, the grantee agreed to pay an annual general road assessment for each lot. The agreement originally established the amount of the annual general road assessment at $200 for a class A lot (built upon and ready for occupancy) or $100 for a class B lot (not built upon or ready for occupancy). The agreement further provided that the amount of the annual general road assessment was subject to change "from time to time [as] determined by the Covenants." The Covenants referred to were the restrictive

---

1.      The Andersons personally purchased Lots 40 and 61 of the Eagle Crest subdivision. Lot 70 was purchased through the trust of Terry Mitchell Anderson and Ann Carol Anderson. For purposes of this appeal, the distinction between the personal and trust properties is not material.

covenants the grantor prepared and filed for Eagle Ridge Estates. Only those provisions of the covenants pertaining to the general road assessments apply to Andersons. The agreement provided that the grantee would "be subject to and be bound by all provisions of the Covenants providing for general road assessments for lots and enforcement of the same, but the Covenants shall not otherwise apply to Grantee's Property." The agreement also specified the manner of collection for an unpaid assessment. The agreement provided that "the delinquent assessment together with interest and collection costs as provided in the Covenants shall become a continuing lien on Grantee's Property, or on the subdivided lot in default, as the case may be, until paid as provided in the Covenants."

[¶3.] Homeowners Association brought suit against Andersons claiming they owed general assessments for 2005, 2006, and 2007. Andersons claim Homeowners Association only has authority to assess "general road assessments" against them under the easement agreement, not "general assessments." Andersons contend that Homeowners Association's general assessments include more than road assessments and are outside of their contractual obligations. Andersons asked Homeowners Association to itemize those portions of the general assessment that were used for roads. Homeowners Association did not provide an itemization. The circuit court granted summary judgment to Homeowners Association and entered a Judgment and Judgment for Foreclosure on Andersons' lots. Andersons argue on appeal that genuine issues of material fact exist as to the amount they owe for general road assessments.

## STANDARD OF REVIEW

[¶4.] We review the granting of summary judgment by "'restrict[ing] our review to determin[e] whether the record before us discloses any genuine issues of material fact and, if not, whether the . . . [circuit] court committed any errors of law.'" *Flandreau Pub. Sch. Dist. No. 50-3 v. G.A. Johnson Constr., Inc.*, 2005 SD 87, ¶7, 701 NW2d 430, 434 (quoting *Switlik v. Hardwicke Co., Inc.*, 651 F2d 852, 857-58 (3d Cir 1981)). "There must be no material facts at issue, and there must 'be no genuine issue on the inferences to be drawn from those facts.'" *Discover Bank v. Stanley*, 2008 SD 111, ¶16, 757 NW2d 756, 762 (quoting *A-G-E Corp. v. State*, 2006 SD 66, ¶17, 719 NW2d 780, 786). However, "this Court will affirm the circuit court's ruling granting a motion for summary judgment if any basis exists to support the ruling." *Id.* ¶19 (citing *Westfield Ins. Co., Inc. v. Rowe ex rel* Estate of Gallant, 2001 SD 87, ¶4, 631 NW2d 175, 176) (additional citations omitted).

## ANALYSIS

[¶5.] Andersons concede they are required to pay general road assessments under the terms of the easement. Terms in an easement agreement that are specific in nature are to be "'decisive of the limits of the easement.'" *Canyon Lake Park, L.L.C. v. Loftus Dental, P.C.*, 2005 SD 82, ¶17, 700 NW2d 729, 734 (quoting *Picardi v. Zimmiond*, 2005 SD 24, ¶20, 693 NW2d 656, 662). We ascertain the meaning of agreement terms "by examin[ing] the [agreement] as a whole and giv[ing] words their 'plain and ordinary meaning.'" *Id.* (quoting *Gloe v. Union Ins. Co.*, 2005 SD 30, ¶29, 694 NW2d 252, 260). The terms of the easement agreement specifically require Andersons to pay general road assessments. Homeowners

Association claims that general road assessments are the same as general assessments imposed by Homeowners Association. To support its argument, Homeowners Association focuses on the language of Eagle Ridge Estates' covenant provisions. It argues that because the covenants only use the terms "general assessments" and "special assessments," no third category of "general road assessments" exists.

[¶6.]     The covenants incorporated by the easement consist of several pages of provisions giving Homeowners Association authority to do a variety of things beyond maintaining roads, such as "protecting the value of the lots . . . [,][keeping the Development] attractive, beneficial, free from nuisance and guarding against fires and unnecessary interference with the natural beauty." In order to carry out the purpose of the covenants, Homeowners Association is given authority to assess general and special assessments to be "used to promote welfare and safety, and to protect the investment of the owners and residents of 'the Development.'"

[¶7.]     In contrast, the language of the easement agreement only refers to roads. The easement agreement requires Andersons to pay for "general road assessments" subject to periodic adjustments as "determined by the Covenants." The easement agreement only incorporates those covenants dealing with "general road assessments for lots and enforcement of the same." While the easement agreement incorporates certain provisions of the covenants, the covenants cannot expand Andersons' obligation beyond the terms of the easement agreement.

[¶8.]     Homeowners Association's argument that the covenant term "general assessments" is synonymous with "general road assessments" has the effect of

expanding Andersons' obligation. The covenants do not equate the two terms. The term "general assessments" is broadly defined in the Covenants to include: "operating expenses; management and administration; taxes; insurance costs; reserves; improvements; and maintenance." Conversely, the plain meaning of the easement term "general road assessments" indicates it is limited to expenses associated with roads. It cannot by definition include expenses unrelated to roads otherwise assessed against Homeowners Association members.

[¶9.]     Consequently, it becomes a question of material fact whether the assessment that Homeowners Association imposed upon Andersons only includes assessments for roads. Homeowners Association failed to undisputedly show the assessment is strictly for roads. Although Homeowners Association makes the argument that the assessment is a road assessment, its own evidence indicates it used general assessments to pay for items other than roads, such as liability insurance and miscellaneous expenses, including postage and photocopies. Minutes from an Eagle Ridge Board meeting refer to what appear to be general assessments as "annual dues." The president of Homeowners Association merely stated in her affidavit that Andersons had failed to pay "general assessments." Her affidavit never referred to general road assessments.

[¶10.]     Andersons would not be required to pay assessments unrelated to general road assessments per the easement agreement. Eagle Ridge cannot demonstrate the absence of material facts given the ambiguity that exists as a result of its imprecise and interchangeable application of general assessments with general road assessments. Consequently, this issue should not have been resolved

through summary judgment. The evidence, viewed in the light most favorable to Andersons, indicates that Homeowners Association's assessment included more than road assessments. We reverse and remand for further proceedings consistent with this opinion.[2]

[¶11.]     GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and SEVERSON, Justices, concur.

---

2.     Because we hold the circuit court erred in granting summary judgment, we reverse the award of attorneys' fees and need not reach the issue raised by Homeowners Association by notice of review.