#26363, #26377-aff in pt, rev in pt & rem-LSW

**2013 S.D. 21**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

EAGLE RIDGE ESTATES
HOMEOWNERS ASSOCIATION, INC.,                    Plaintiff and Appellee,


    v.


TERRY MITCHELL ANDERSON a/k/a
TERRY M. ANDERSON; ANN CAROL
ANDERSON a/k/a ANN C. ANDERSON;
and TRUST OF TERRY MITCHELL
ANDERSON and ANN CAROL
ANDERSON DATED APRIL, 8, 2005,                    Defendants and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA
* * * *

THE HONORABLE WARREN G. JOHNSON
Judge
* * * *

THOMAS E. BRADY of
Brady & Pluimer, PC
Spearfish, South Dakota                    Attorneys for plaintiff
                                           and appellee.


ERIC J. PICKAR
JOSEPH M. DYLLA of
Bangs, McCullen, Butler,
  Foye & Simmons, LLP
Rapid City, South Dakota                   Attorneys for defendants
                                           and appellants.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 8, 2013

OPINION FILED **02/27/13**

WILBUR, Justice

[¶1.]     This is the second appeal to this Court concerning the amount Terry and Ann Anderson (Andersons) owe Eagle Ridge Estates Homeowners Association, Inc. (Homeowners Association) for general road assessments pursuant to an easement agreement.

## FACTS AND PROCEDURAL BACKGROUND

[¶2.]     Homeowners Association and Andersons have been involved in protracted litigation regarding assessments on Andersons' three lots in a subdivision (Eagle Crest) adjacent to the Eagle Ridge Estates subdivision. *Eagle Ridge Estates Homeowners Ass'n, Inc. v. Anderson* (*Eagle Ridge I*), 2010 S.D. 1, ¶ 2, 777 N.W.2d 369, 371. Andersons' predecessor in title obtained a private access easement from the prior owners of Eagle Ridge Estates subdivision. *Id.* This "private access easement[,] operat[ing] as a covenant running with the land and [binding] and inur[ing] to the benefit of 'successors in title[,]'" allows Andersons to have access to their property in Eagle Crest by way of roads running through Eagle Ridge. *Id.* In exchange, the grantee of the easement "agreed to pay an annual general road assessment for each lot." *Id.*

[¶3.]     Homeowners Association brought suit against Andersons for their failure to pay general assessments for the 2005, 2006, and 2007 assessment years. *Id.* ¶ 3. Andersons argued that Homeowners Association "only ha[d] authority to assess 'general road assessments' against them under the easement agreement, [and] not 'general assessments[,]'" which were outside of the contractual obligations. *Id.* The trial court granted summary judgment in favor of Homeowners Association and entered a judgment allowing Homeowners Association to foreclose on

Andersons' lots. *Id.* Andersons appealed arguing that "genuine issues of material fact exist[ed] as to the amount . . . owe[d] for general road assessments." *Id.* The trial court awarded Homeowners Association $4,200 in attorney fees from its requested $8,628.69.

[¶4.]       This Court interpreted "the plain meaning of the easement term 'general road assessments'" to be "limited to expenses associated with roads." *Id.* ¶ 8. Additionally, we determined that there existed "a question of material fact [as to] whether the assessment that Homeowners Association imposed upon Andersons only include[d] assessments for roads." *Id.* ¶ 9. This Court noted that Homeowners Association's "own evidence indicate[d] it used general assessments to pay for items other than roads, such as liability insurance and miscellaneous expenses, including postage and photocopies." *Id.* Thus, we reversed and remanded the trial court's grant of summary judgment in favor of Homeowners Association. *Id.* ¶ 10. Additionally, we reversed the trial court's award of attorney fees ($4,200) and did not address Homeowners Association's notice of review regarding attorney fees ($8,628.69) incurred for work performed. *Id.* ¶ 10 n.2.

[¶5.]       On remand, the trial court held a trial and determined whether the expenditures made by Homeowners Association were associated with roads. Homeowners Association presented testimony of Clint Meyer, a former president and board member of Homeowners Association. Meyer testified that Homeowners Association had only two functions: roads in the subdivision and architectural reviews of building plans proposed by lot owners. He indicated that Homeowners Association had never incurred any expenses as a result of the architectural reviews. Further, he testified that Homeowners Association did not make any

expenditures that were not related to the roads in the subdivision. Meyer then examined all of the expenses in Homeowners Association's financial documents and explained to the court how all were related to or associated with the subdivision roads.

[¶6.]     In response, Andersons presented the expert testimony of Jennifer Konvalin, a certified public accountant. Following a review of Homeowners Association's financial documents, Konvalin used the Internal Revenue Service (IRS) rules and regulations to categorize Homeowners Association's expenses as general expenses, general road expenses, or capital expenses. Based on her interpretation of the IRS rules and regulations, Konvalin included as general road expenses any expenditures that were "directly related" to maintenance or repair of roads within the subdivision. By contrast, Konvalin did not include general expenses in her calculation of general road assessments because she determined that those expenses were not for the purpose of maintaining the roads. Konvalin also concluded that Homeowners Association's capital expenses were required to be excluded from the general road assessment based on her belief that capital expenditures should be treated differently than general road expenses.

[¶7.]     Based on this approach, Konvalin determined that expenses for liability insurance, gutters for the mailboxes, food and drinks for meetings, office supplies and postage were general expenses not a part of the general road assessment. Conversely, Konvalin determined that gravel, snow removal, and drainage pipe expenses were expenses that are a part of the general road assessment. Additionally, Konvalin concluded that Homeowners Association's installation of guardrails was a capital expense.

[¶8.]        Konvalin also devised an alternative method of calculating the general road assessments. In doing so, she calculated the general road assessments owed based upon the number of miles of Homeowners Association's roads each property owner utilized in order to get to his or her property in each development.

[¶9.]        After trial, the court found that Konvalin's expert testimony was not "relevant or helpful." The court also determined that "all expenditures made by [Homeowners Association] during the years 2002 through 2011 were related to roads or associated with roads." Homeowners Association was therefore entitled both to payment from Andersons for the full amount of the assessments against each of their lots plus interest and to foreclose on the liens on all of Andersons' lots. A judgment was entered against Andersons for $8,011.64 plus interest. The trial court reserved the issue of attorney fees for a later proceeding.

[¶10.]        Subsequently, Homeowners Association moved for an award of attorney fees requesting $51,892.06, the amount representing all of the work completed before and after the appeal in *Eagle Ridge I*. The trial court ultimately awarded Homeowners Association $43,263.37 in attorney fees. This amount reflected the amount of legal work completed following the appeal in *Eagle Ridge I*.

[¶11.]        Andersons appeal the following issues:

1.    Whether the trial court erred by finding the testimony from Andersons' expert witness was not relevant or helpful.

2.    Whether the trial court erred by finding that all expenditures made by Homeowners Association during the years 2002 through 2011 were related to or associated with roads.

3.    Whether the trial court erred by awarding Homeowners Association's attorney fees.

By notice of review, Homeowners Association seeks review of the trial court's $43,263.37 attorney fee award claiming instead that it was entitled to its requested fee of $51,892.06. Homeowners Association also filed motions for appellate attorney fees pursuant to SDCL 15-26A-87.3 and for delay damages pursuant to SDCL 15-30-6(5).

## STANDARD OF REVIEW

[¶12.] This Court reviews evidentiary rulings "'under an abuse of discretion standard.'" *Meadowland Apartments v. Schumacher*, 2012 S.D. 30, ¶ 24, 813 N.W.2d 618, 624 (quoting *State v. Ralios*, 2010 S.D. 43, ¶ 38, 783 N.W.2d 647, 658). "'An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence.'" *Id.* Factual findings are examined under the clearly erroneous standard. SDCL 15-6-52(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 542, 92 L. Ed. 746 (1948). *See, e.g.*, *Mathis Implement Co. v. Heath*, 2003 S.D. 72, ¶ 9, 665 N.W.2d 90, 92. "'[T]he credibility of the witnesses, the import to be accorded their testimony, and the weight of the evidence must be determined by the trial court, and we give due regard to the trial court's opportunity to observe the witnesses and examine the evidence.'" *Hubbard v. City of Pierre*, 2010 S.D. 55, ¶ 26, 784 N.W.2d 499, 511 (quoting *Baun v. Estate of Kramlich*, 2003 S.D. 89, ¶ 21, 667 N.W.2d 672, 677).

[¶13.]    In addition, conclusions of law are reviewed de novo. *Estate of Henderson v. Estate of Henderson*, 2012 S.D. 80, ¶ 9, 823 N.W.2d 363, 366. Lastly, a trial court's award of attorney fees is reviewed under an abuse of discretion standard. *Johnson v. Miller*, 2012 S.D. 61, ¶ 7, 818 N.W.2d 804, 806.

## ANALYSIS AND DECISION

[¶14.]    **1.    Whether the trial court erred by finding the testimony from Andersons' expert witness was not relevant or helpful.**

[¶15.]    Andersons argue that Konvalin's testimony was both relevant and helpful in distinguishing between expenses that can be categorized as general assessments or as general road assessments, the latter being Andersons' obligation. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." SDCL 19-12-1 (Rule 401). A trier of fact may choose to accept "all, part, or none of an expert's testimony." *Great W. Bank v. H & E Enters., LLP*, 2007 S.D. 38, ¶ 10, 731 N.W.2d 207, 209.

[¶16.]    The trial court did not abuse its discretion in finding that Konvalin's testimony was not relevant or helpful. The trial court determined that Konvalin, in forming her opinion, "did not consider that the only functions of [Homeowners Association] are related to the roads or to architectural reviews of proposed improvements on Eagle Ridge Estates Subdivision lots[.]" We agree. The record supports this finding in that Meyer testified that the only two functions of Homeowners Association were architectural reviews and roads and there is no evidence that any assessments were used to pay for the architectural review or expenses not associated with roads.

[¶17.] The record further supports the trial court's finding that, in *Eagle Ridge I*, this Court only referenced expenses related to or associated with roads and not "directly related to roads" as used by Konvalin and asserted by Andersons. Additionally, as the trial court found, this Court did not refer to the IRS or the IRS Code as a method for distinguishing between types of assessments.

[¶18.] Finally, the record supports the trial court's rejection of Konvalin's alternative method of calculating assessments based upon the number of lots in each subdivision and the miles of Homeowners Association's roads used by property owners in each development. Konvalin conceded that this alternative method was not provided for in the covenants, the easement, or mandated by this Court's instructions in *Eagle Ridge I*. Thus, based on a review of the record, we cannot say that the trial court abused its discretion in determining that Konvalin's testimony was not relevant or helpful.

[¶19.] **2. Whether the trial court erred by finding that all expenditures made by Homeowners Association during the years 2002 through 2011 were related to or associated with roads.**

[¶20.] Andersons argue that many of the expenses contained within Homeowners Association's financial documents were not "'limited to' or 'strictly for' roads." Specifically, Andersons assert that expenses for "office supplies, postage, and mailbox rental are general operating expenses." Further, they contend that the expenses for stain used for residential mailboxes; mowing and spraying weeds; liability and director liability insurance; and drinks, chicken, and pizza for Homeowners Association meetings were not related to roads.

[¶21.]     Here, the record supports the trial court's determination that all of Homeowners Association's expenses were related to or associated with roads. The trial court was able to observe the testimony of Meyer, who addressed each expense incurred by Homeowners Association and explained how all were related to or associated with roads. Andersons were allowed to cross-examine Meyer as to all of these disputed expenses.

[¶22.]     Specifically, Meyer testified that postage stamps and office supplies were for paying bills associated with roads, such as snow removal bills, and for sending out letters to members regarding the roads and road assessments. Meyer also explained that the mailbox rental was to receive bills from various road contractors and assessments from the members of Homeowners Association. In regard to the use of assessments to pay for stain on the residential mailboxes, he testified that, because of the steep grade in the road, the post office would not deliver mail to individual residences. In response, Homeowners Association built mailboxes by the entrance to the subdivision. The stain on the mailboxes was intended to preserve the mailboxes and avoid future replacement expenses.

[¶23.]     Meyer further testified that assessments were used to spray and mow weeds along the side of the roads and in the ditches to prevent weeds from protruding on the roads and adversely affecting drainage in culverts, which could lead to flooding of roads within the subdivision. Additionally, he explained to the court that assessments were used to purchase insurance because of the liability placed on Homeowners Association and its Board of Directors in making decisions concerning the roads. Lastly, Meyer testified that the food and drink expenses paid by assessments were incurred during Homeowners Association meetings that

discussed only road-related issues. He explained that providing food and drinks at the meetings helped with attendance.

[¶24.] The trial court was able to judge Meyer's credibility and weigh the evidence that was before it to decide whether the expenses incurred were related to or associated with roads. "'[W]e give due regard to the trial court's opportunity to observe the witnesses and examine the evidence.'" *Hubbard,* 2010 S.D. 55, ¶ 26, 784 N.W.2d at 511 (quoting *Baun,* 2003 S.D. 89, ¶ 21, 667 N.W.2d at 677). Based on a review of the record, we are not left with a definite and firm conviction that a mistake was made. Thus, the trial court did not err in finding that all expenditures made by Homeowners Association during the years 2002 through 2011 were related to or associated with roads.

[¶25.]   **3.   Whether the trial court abused its discretion in its award of attorney fees.**

**a.   Attorney Fees incurred Post-*Eagle Ridge I.***

[¶26.] Andersons argue that the award of attorney fees, $43,263.37, was unreasonable when compared to the amount of Homeowners Association's recovery, $8,011.64.[1] Additionally, they argue that a significant amount of legal fees incurred could have been avoided if Homeowners Association would have provided Andersons

---

1.   The covenants provide in pertinent part:

> If an assessment is not paid within thirty (30) days after its due date, the [Homeowners] Association may bring action against the owner. The [Homeowners] Association m[a]y also foreclose a lien against the lot in the amount provided by law. In either event, the [Homeowners] Association shall recover from the owners or out of the proceeds of a foreclosure, accrued interest and costs of collection, including but not limited to reasonable attorney's fees.

with information regarding Homeowners Association's expenses, which was requested by Andersons in 2005. Andersons assert that Homeowners Association rejected each of Andersons' attempts to resolve the matters informally.

[¶27.]     In response, Homeowners Association argues that the trial court did not abuse its discretion in its award of $43,263.37 in attorney fees. Homeowners Association also contends the amount of attorney fees awarded by the trial court was reasonable in relationship to the limited and indefinite discovery responses by Andersons following *Eagle Ridge I*. Because of the limited and indefinite responses to discovery, Homeowners Association claims that it had to prepare and submit extensive financial exhibits for the trial court. Additionally, Homeowners Association asserts that its requested amount for attorney fees was not unreasonable when compared to the $60,000 in attorney fees and costs that Andersons spent defending their claim.

[¶28.]     South Dakota follows the American rule for attorney fees in "that each party bears the burden of the party's own attorney fees." *In re S.D. Microsoft Antitrust Litig.*, 2005 S.D. 113, ¶ 29, 707 N.W.2d 85, 98. There are two exceptions to this rule: "first[,] when a contractual agreement between the parties entitles the prevailing party to attorney fees, and second[,] when an award of attorney fees is authorized by statute." *Id.* The award of attorney fees "must be reasonable for the services rendered." *Id.* There are a number of factors to be considered by a trial court in determining a reasonable award of attorney fees in civil cases:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

> > (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> > (3) the fee customarily charged in the locality for similar legal services;
> > (4) the amount involved and the results obtained;
> > (5) the time limitations imposed by the client or by the circumstances;
> > (6) the nature and length of the professional relationship with the client;
> > (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> > (8) whether the fee is fixed or contingent.

*Id.* (quoting *City of Sioux Falls v. Kelley*, 513 N.W.2d 97, 111 (S.D. 1994). No single factor determines whether attorney fees should be awarded, "but rather all of the factors should be taken into consideration in determining a reasonable fee." *Id.* "However, before considering any of the factors listed above, the calculation of attorney fees must begin with the hourly fee multiplied by the attorney's hours." *Id.* ¶ 30.

[¶29.] Furthermore, "[t]his Court has consistently required trial courts to enter findings of fact and conclusions of law when ruling on a request for attorney fees." *Crisman v. Determan Chiropractic, Inc.*, 2004 S.D. 103, ¶ 30, 687 N.W.2d 507, 514. "The trial court is required 'to make specific findings based upon the factors.'" *Id.* (quoting *Duffy v. Cir. Ct., Seventh Jud. Cir.*, 2004 S.D. 19, ¶ 18, 676 N.W.2d 126, 134).

[¶30.] In making its findings of fact and conclusions of law as to its award of $43,263.37 in attorney fees for the legal work performed post-*Eagle Ridge I*, the trial court methodically considered each of the reasonableness factors. The record supports the finding that the time and labor rendered were appropriate even

though the case and questions presented were not particularly difficult. As the trial court determined, the evidentiary record was voluminous. Informal discussions between the parties have been going on since 2005 and, in order to fully-present the matter to the trial court, Homeowners Association had to prepare extensive exhibits and an exhaustive accounting of its expenditures spanning ten years. There is nothing in the record, however, to suggest that Homeowners Association's counsel turned away other work due to any time demands that this litigation presented. Further, the fee charged by counsel was customary to the area for the type of legal work he performed.

[¶31.] Additionally, as the trial court found, the disproportionate ratio between the result obtained, $8,011.64 and the amount claimed by Homeowners Association in attorney fees, $51,892.06, does not appear to be unreasonably disproportionate when compared to the $60,000 in attorney fees and costs that Andersons have spent in defense of the their claim. Moreover, Homeowners Association did not impose any time constraints on counsel, and counsel represented Homeowners Association at the highest level or ability and experience for four years. Finally, the trial court determined that the fee was fixed. Therefore, based on these findings, the trial court did not abuse its discretion in its award of $43,263.37 in attorney fees for the legal work performed post-*Eagle Ridge I*.

### b. Attorney Fees incurred Pre-*Eagle Ridge I*.

[¶32.] By its notice of review, Homeowners Association argues that the trial court abused its discretion when it failed to consider or award Homeowners Association's $8,628.69 in attorney fees for legal work performed prior to the appeal in *Eagle Ridge I*. Homeowners Association asserts that the trial court failed to

make required findings of fact regarding its denial of these fees. Homeowners Association contends that the "law of the case" doctrine does not apply to bar Homeowners Association's recovery of pre-*Eagle Ridge I* attorney fees because this Court, in *Eagle Ridge I*, did not reach or decide the issue of attorney fees raised in Homeowners Association's notice of review. In response, Andersons argue that Homeowners Association is not entitled to $8,628.69 in attorney fees for legal work performed prior to the appeal in *Eagle Ridge I* because the "law of the case" doctrine prevents this issue from being relitigated.

[¶33.]     This Court has stated that "[t]he 'law of the case' doctrine is intended to afford a measure of finality to litigated issues. It is a rule of practice and procedure which for policy reasons provides that once an issue is litigated and decided it should remain settled for all subsequent stages of the litigation." *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251, 260 (S.D. 1976) *overruled on other grounds by First Premier Bank v. Kolcraft Enters., Inc.*, 2004 S.D. 92, 686 N.W.2d 430. This Court stated that the policy reasons behind this doctrine are: "[f]irst, . . . to avoid relitigation of issues in subsequent proceedings in the same case – remand, retrials, or appeals[, and] . . . [s]econd[ ], . . . the application of the rule prior to entry of judgment would inhibit the trial court in correcting what it believed to be an erroneous decision." *Id.*

[¶34.]     In a footnote in *Eagle Ridge I*, we noted that "[b]ecause we hold the [trial] court erred in granting summary judgment, we reverse the award of attorney's fees and need not reach the issue raised by Homeowners Association by notice of review." 2010 S.D. 1, ¶ 10 n.2, 777 N.W.2d at 373 n.2. In determining there were disputed material facts as to whether the assessment was for roads and

reversing the grant of summary judgment, this Court essentially revived the case for further litigation. Thus, the posture of the case after *Eagle Ridge I* was that no final judgment had been entered. Therefore, since Homeowners Association's request for attorney fees for legal work performed pre-*Eagle Ridge I* was not "finally" litigated in *Eagle Ridge I*, the "law of the case" doctrine does not apply.

[¶35.] Because the "law of the case" doctrine does not apply, we must examine the trial court's findings of fact and conclusions of law relating to Homeowners Association's requested attorney fees ($8,628.69) for work performed pre-*Eagle Ridge I*. From a review of the record before this Court, it is not clear whether the trial court considered Homeowners Association's attorney fee request of $8,628.69. The confusion lies in the contradictory findings of fact and conclusions of law, specifically finding of fact four, finding of fact nine, and conclusion of law two.

[¶36.] Finding of fact four[2] suggests that the trial court considered the award of attorney fees for work performed pre-*Eagle Ridge I* to be reversed. From this finding, the trial court then appears to examine the reasonableness factors using Homeowners Association's requested attorney fees of $43,263.37 for work performed

---

2. Finding of fact four provides:

> Subsequent to entry of judgment, [Homeowners] Association moved for an award of attorney fees and disbursements in the total sum of $51,892.06. This included [Homeowners] Association's original claim of $8[,]628.69 as contained in [Homeowners Association's counsel's] 1st affidavit, and of which the [c]ourt allowed $4[,]200. This award was reversed by the Supreme Court and the issue of attorney fees was remanded for further proceedings.

post-*Eagle Ridge I.* However, in finding of fact nine,[3] the court considers

$51,892.06, the total amount of Homeowners Association's requested attorney fees

incurred pre- and post-*Eagle Ridge I,* in order to determine whether "the amount

involved and results obtained" were unreasonable. Finally, in conclusion of law

two,[4] the trial court apparently applied the reasonableness factors to the attorney

fees incurred post-*Eagle Ridge I*, and awarded $43,263.37 accordingly.

[¶37.] From the record before us, we cannot determine whether the trial court

considered the $8,628.69 in requested attorney fees for work performed pre-*Eagle*

*Ridge I* in reaching its decision. Therefore, we reverse and remand to the trial court

for further findings and conclusions as to Homeowners Association's request for

$8,628.69 in attorney fees for work performed pre-*Eagle Ridge I.*

### c. Appellate attorney fees

[¶38.] Homeowners Association has submitted a motion for appellate

attorney fees to this Court. Pursuant to SDCL 15-26A-87.3, appellate attorney fees

may be granted "where such fees may be allowable[.]" "We have interpreted this to

mean that appellate attorney fees may be granted 'only where such fees are

---

3. Finding of fact nine states:

> The amount of the claim for attorney fees [of] $51,892.06 is
> significantly disproportionate to the results obtained, a
> judgment in the amount of $8,011.64. However, Andersons
> claim to have spent some $60,000 in attorney fees and costs, in
> defense of [Homeowners] Association's claim and in the
> unsuccessful pursuit of their counterclaim and various defenses.

4. Conclusion of law two provides that "[p]laintiff is entitled to recover attorney
   fees in the sum of $43,263.37 attributable to legal work performed from and
   after January 6, 2010[, the date of this Court's decision in *Eagle Ridge I*]."

permissible at the trial level.'"  *Grynberg Exploration Corp. v. Puckett*, 2004 S.D. 77,

¶ 33, 682 N.W.2d 317, 324 (quoting *Hentz v. City of Spearfish, Dep't of Pub. Works,*

*Office of Planning & Zoning*, 2002 S.D. 74, ¶ 13, 648 N.W.2d 338, 342).  Statutory

and case law provide for compensation for attorney fees in civil cases when a

specific statute authorizes such fees or when the parties have expressly or impliedly

agreed to payment of attorney fees.  *See* SDCL 15-17-38; *S.D. Microsoft Antitrust*

*Litig.*, 2005 S.D. 113, ¶ 29, 707 N.W.2d at 98.

[¶39.]      Here, the covenants expressly authorized the payment of "reasonable

attorney[ ] fees" for the foreclosure of any liens on the property.  *See id.* ¶ 26 n.1.

Consequently, we determine that Homeowners Association is entitled to recover

$14,311.06, the amount submitted in Homeowners Association's verified, itemized

statement of legal services rendered in this appeal.

### d.      Delay damages

[¶40.]      Homeowners Association also submitted a motion for delay damages

pursuant to SDCL 15-30-6(5).  The award of damages for delay is within the

discretion of this Court.  SDCL 15-30-6(5).  SDCL 15-30-6(5) provides in part:

> Costs on appeal to the Supreme Court shall be allowed to the
> prevailing party in civil actions and special proceedings[.]  . . .
> Allowable costs are set out as follows:
> . . .
>
> (5) When a judgment is affirmed the court may, in its discretion,
> also award damages for the delay, not to exceed ten percent of
> the amount of the judgment.

We have previously awarded delay damages when the appeal was trivial or when

the appeal was without merit and taken for no other purpose than to delay.  *See*

*Coffey, Carr & Coffey v. Carlberg Co.*, 51 S.D. 117, 212 N.W. 496, 497 (1927)

(determining that the appeal was "so trivial" as to warrant an award of damages for delay); *Pollard v. Borneman et al.*, 47 S.D. 622, 201 N.W. 525 (1924) (finding that the defendant's appeal was "so utterly without merit that it could have been taken for no other purpose than to delay plaintiff in collecting his judgment").

[¶41.]    Here, we do not view this appeal as "utterly without merit" and taken for no other purpose than delay nor do we view this appeal as "trivial." Andersons successfully appealed a summary judgment to this Court in *Eagle Ridge I*. At the resulting trial, there were questions to be resolved regarding the amount of assessments owed. Therefore, it cannot be said that this appeal was taken for the purpose of delay or that this appeal was trivial. Thus, we decline to award any damages for delay pursuant to SDCL 15-30-6(5).

## CONCLUSION

[¶42.]    We affirm the trial court's findings that Konvalin's testimony was not relevant or helpful and that all expenditures made by Homeowners Association during the years 2002 through 2011 were related to or associated with roads. In addition, we affirm the trial court's award of $43,263.37 in attorney fees to Homeowners Association for legal work performed post-*Eagle Ridge I*. However, because of the contradictory findings and conclusions by the trial court, we reverse and remand to the trial court to clarify its decision as to Homeowners Association's request for $8,628.69 in attorney fees for work performed pre-*Eagle Ridge I*. Lastly, we award Homeowners Association $14,311.06 for its appellate attorney fees and deny Homeowners Association's request for delay damages. Therefore, we affirm in part, reverse in part, and remand.

[¶43.]       GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and

SEVERSON, Justices, concur.