#30947-a-SRJ
**2025 S.D. 66**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

THE CITY OF SIOUX FALLS,                          Plaintiff and Appellant,

v.

JOHNSON PROPERTIES, LLC,                          Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JEFFREY C. CLAPPER
Judge

\* \* \* \*

DREW A. DRIESEN
JAMES E. MOORE of
Woods Fuller Shultz & Smith, P.C.
Sioux Falls, South Dakota                 Attorneys for plaintiff and
                                          appellant.


CLINT SARGENT
ERIN E. WILLADSEN of
Meierhenry & Sargent, LLP
Sioux Falls, South Dakota                 Attorneys for defendant and
                                          appellee.

\* \* \* \*

                                          ARGUED
                                          OCTOBER 9, 2025
                                          OPINION FILED **11/19/25**

#30947

JENSEN, Chief Justice

[¶1.] The City of Sioux Falls (City) filed a petition for condemnation to acquire two pieces of property owned by Johnson Properties at the corner of Arrowhead Parkway and Six Mile Road in Sioux Falls. A jury returned a verdict awarding Johnson Properties just compensation of $382,600. Johnson Properties thereafter filed a motion for attorney fees. After a hearing on the motion, the circuit court awarded Johnson Properties reasonable attorney fees of $139,724.60. The City appeals, arguing that the circuit court abused its discretion in assessing the amount of attorney fees. We affirm.

## Factual and Procedural History

[¶2.] In 2005, the City and the Department of Transportation (DOT) entered into an agreement providing that the DOT would expand Arrowhead Parkway from Sycamore Avenue to 26th Street and subsequently turn it over to the City. In 2011, the DOT handed the project over to the City, but agreed to continue assisting with the design and construction costs. The City started the design of Arrowhead Parkway in 2015 and determined that the project needed to be completed in phases.

[¶3.] The relevant phase for the purposes of this appeal is Phase 2A, which commenced in April 2022 and was completed in May 2023. Phase 2A involved the realignment of the intersection of Arrowhead Parkway and Six Mile Road. Specifically, the City relocated the existing intersection to the west; added turning lanes, medians, and stoplights; and reoriented the intersection's 52-degree angle due to safety concerns.

-1-

[¶4.] The piece of land at the corner of Arrowhead Parkway and Six Mile Road is owned by Johnson Properties and houses the Alibi Bar & Grill (Alibi). To complete Phase 2A, the City needed to acquire two portions of the property situated at that corner. Additionally, the relocation of the intersection resulted in the loss of direct access from Arrowhead Parkway to the Alibi. The City initially offered Johnson Properties $32,454 to purchase the affected parts of the Alibi property.

[¶5.] On October 25, 2021, the City filed a verified petition for condemnation and declaration of taking to acquire the two pieces of property and obtain temporary easements to perform work on the project. Pursuant to SDCL 31-19-28, the City deposited its appraised value for the acquired property, $51,647, with the clerk of courts to proceed with a taking of the property. Johnson Properties challenged the City's estimate of just compensation but did not challenge the necessity of the taking.

[¶6.] Shortly before trial, the City increased its offer of compensation to $250,000. Johnson Properties rejected the offer and the case proceeded to a three-day jury trial on the issue of just compensation. At trial, Johnson Properties' appraiser testified that, in his opinion, the difference between the value of the property before the taking ($585,000) and after the taking ($180,000) was $405,000. The City's appraiser testified that the difference between the value of the property before the taking ($241,495) and after the taking ($189,784) was $51,711. The jury returned a verdict awarding Johnson Properties just compensation in the amount of $382,600, which exceeded the City's final offer to Johnson Properties by more than 20%.

[¶7.]     On November 6, 2024, Johnson Properties filed a motion for expert witness fees of $36,814.93, an application for taxation of costs of $573.13, and for reasonable attorney fees of $139,724.60, all pursuant to SDCL 21-35-23.[1]  The City did not object to the motion for expert witness fees, the application for costs, or Johnson Properties' statutory right to reasonable attorney fees.  It did, however, object to the amount of attorney fees requested by Johnson Properties.

[¶8.]     In support of its motion for attorney fees, Johnson Properties submitted an itemized invoice of the actual work performed by its counsel, listing 137.2 total hours expended at an hourly rate of $450, for a total of $61,740 before tax.  Johnson Properties also submitted a copy of the attorney fee agreement with its counsel, which provided for payment of a contingent attorney fee of 33.33% of any "lift."[2]  Additionally, counsel for Johnson Properties filed an affidavit providing that his current hourly rate for eminent domain work is $450 per hour.  Johnson Properties also submitted four affidavits from attorneys in the region specializing in eminent domain law stating, in essence, that (1) a contingent fee agreement is a normal and customary fee arrangement between lawyers and landowners in eminent domain cases, with a typical contingent fee in the range of 25% to 50%, and

---

1.    The attorney fee request was based upon the total recovery of $427,156.25, which included the compensation award plus prejudgment interest, less the City's initial offer to Johnson Properties of $32,454, resulting in a contingent fee under the attorney fee agreement of $131,567.42, plus sales tax of $8,157.18.

2.    The "lift" refers to total recovery above the City's offer of $32,454, before counsel was retained, including costs, expert fees, and attorney fees.  The agreement provided that in the event no recovery was made above the "lift," counsel would not be entitled to any fee for services performed.

#30947

(2) the hourly rate charged by counsel is typical for an experienced eminent domain attorney.

[¶9.]       The City did not present any evidence to refute the affidavits submitted by Johnson Properties concerning the typical fee arrangements in eminent domain cases.  In its written objection to the motion for attorney fees, the City did not challenge the reasonableness of the hours spent on the case or the $450 hourly rate charged by counsel for Johnson Properties but argued that the lodestar amount of $61,740 represented a reasonable fee award.

[¶10.]      The circuit court held a hearing on the motion for attorney fees.  After hearing arguments from the parties, the court orally ruled that Johnson Properties was entitled to reasonable attorney fees in the amount of $139,724.60.

[¶11.]      The circuit court also entered written findings of fact and conclusions of law on the issue of attorney fees.  The court found that counsel for Johnson Properties had expended 137.2 hours on the case.  The court also found that the normal and customary fee charged in South Dakota for condemnation cases is a contingent fee; that contingent fees within South Dakota range from 33.33% to 50% of the lift; and that the contingent fee charged by counsel for Johnson Properties was at the low end of that range.

[¶12.]      Further, the court concluded that this case involved a very specialized area of law in which very few lawyers practice.  The court noted that the spread of values between the parties made the outcome unpredictable and the selection of strategy crucial, and that the amount involved in this case and the results were substantial.  Further, the court concluded that counsel for Johnson Properties had

-4-

shown the experience, skill, and ability to perform this particular form of litigation. Finally, the court noted that Johnson Properties would pay at least $202,973.99 in actual attorney fees, based upon the total recovery.

[¶13.]     The sole issue on appeal is whether the circuit court abused its discretion in awarding Johnson Properties $139,724.60 in attorney fees.

## Standard of Review

[¶14.]     "An award of attorney fees is reviewed under the abuse of discretion standard." *Crisman v. Determan Chiropractic, Inc.*, 2004 S.D. 103, ¶ 24, 687 N.W.2d 507, 513 (citation omitted). "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable.'" *In re Estate of Mack*, 2025 S.D. 7, ¶ 13, 17 N.W.3d 874, 879 (citation modified) (citations omitted).

## Analysis

[¶15.]     "South Dakota follows the American rule for attorney fees in 'that each party bears the burden of the party's own attorney fees.'" *Eagle Ridge Ests. Homeowners Ass'n, Inc. v. Anderson*, 2013 S.D. 21, ¶ 28, 827 N.W.2d 859, 867 (citation omitted). "There are two exceptions to this rule: 'first[,] when a contractual agreement between the parties entitles the prevailing party to attorney fees, and second[,] when an award of attorney fees is authorized by statute.'" *Id.* (alterations in original) (citation omitted). SDCL 21-35-23 provides that, in a condemnation proceeding, "[i]f the amount of compensation awarded to the defendant by final judgment . . . is twenty percent greater than the plaintiff's final offer . . . and if that total award exceeds seven hundred dollars, the court shall . . . allow reasonable

attorney fees[.]" There is no dispute in this case that Johnson Properties is entitled to reasonable attorney fees under the statute.

[¶16.] "The award of attorney fees 'must be reasonable for the services rendered.'" *Eagle Ridge*, 2013 S.D. 21, ¶ 28, 827 N.W.2d at 867 (citation omitted). "[T]he calculation of attorney fees *must* begin with the hourly fee multiplied by the attorney's hours," referred to as the "lodestar." *In re S.D. Microsoft Antitrust Litig.*, 2005 S.D. 113, ¶ 30, 707 N.W.2d 85, 99 (citation omitted).

> We are not under the illusion that a "just and adequate" fee can necessarily be ascertained by merely multiplying attorney's hours and typical hourly fees. However, we are convinced that this simple mathematical exercise is the only legitimate starting point for analysis. It is only after such a calculation that other, less objective factors, can be introduced into the calculus.

*Id.* (citation modified) (citations omitted).

[¶17.] After this initial calculation, the circuit court must consider a number of factors, which we have often referred to as the *Kelley* factors from our decision in *City of Sioux Falls v. Kelley*, to determine a reasonable award of attorney fees:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent.

*Id.* ¶ 29, 707 N.W.2d at 98–99 (quoting *City of Sioux Falls v. Kelley*, 513 N.W.2d 97, 111 (S.D. 1994)).

[¶18.] Our cases demonstrate that the consideration of these factors may result in an upward or downward adjustment from the lodestar. "No single factor determines [the amount that] should be awarded, 'but rather all of the factors should be taken into consideration in determining a reasonable fee.'" *Eagle Ridge*, 2013 S.D. 21, ¶ 28, 827 N.W.2d at 867 (citation omitted); *see also Kelley*, 513 N.W.2d at 111–12 (remanding an attorney fee award under SDCL 21-35-23 to recalculate a reasonable fee after the circuit court relied exclusively on the contingent fee arrangement between the client and attorney to calculate a reasonable fee).

[¶19.] In support of its claim that the circuit court should not have enhanced the lodestar in this case, the City cites to federal cases which have held that there is a strong presumption that the lodestar is sufficient to achieve a reasonable fee; "that enhancements may be awarded in 'rare' and 'exceptional' circumstances"; and that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee[.]" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552–53 (2010) (citation modified) (citations omitted). However, our fee-shifting cases have never applied such a presumption in calculating a reasonable fee. This is particularly true in condemnation cases instituted by a condemning authority, where we have stated that, in calculating a reasonable fee for a landowner seeking reimbursement of litigation expenses under SDCL 21-35-23, courts should consider

the *Kelley* factors after starting with the lodestar.[3] *Kelley*, 513 N.W.2d at 111; *see also City of Sioux Falls v. Johnson*, 2003 S.D. 115, ¶ 10, 670 N.W.2d 360, 363 (affirming the circuit court's application of the *Kelley* factors to enhance a fee award using the "hourly rate as one reference point and the actual fees paid by landowner as another" because "the purpose of SDCL 21-35-23 is not to compensate landowner's counsel, but to reasonably reimburse landowner for legal fees"); *State ex rel. Dep't of Transp. v. Clark*, 2011 S.D. 20, ¶ 12, 798 N.W.2d 160, 165 ("The purpose of SDCL 21-35-23 is to encourage fair offers from a condemnor; if the final offer is found to be unfair based on a comparison with a jury's verdict, the condemnor will also have to pay attorneys' fees and expert witness fees.").

[¶20.]     The City also claims that the circuit court abused its discretion by failing to start with the lodestar calculation to determine a reasonable attorney fee award, noting the absence of any reference to this calculation in the court's written findings. "This Court has consistently required trial courts to enter findings of fact and conclusions of law when ruling on a request for attorney fees." *Crisman*, 2004 S.D. 103, ¶ 30, 687 N.W.2d at 514 (citation omitted). But the City's argument is not supported by the record or our decisions. In its oral ruling, the circuit court began its analysis with the lodestar calculation, stating:

> [T]he number of hours, I believe was calculated by the city to be 137.2 hours times an hourly rate that [counsel] stated in his

---

3.     Under our state fee-shifting statute in antitrust cases, we have cited federal cases in stating that "[t]he lodestar amount normally provides full and reasonable compensation for counsel who produces excellent results." *In re S.D. Microsoft Antitrust Litig.*, 2005 S.D. 113, ¶ 61, 707 N.W.2d at 106 (citations omitted). We have not, however, applied a similar caveat or approach within the context of the fee-shifting statute in condemnation cases. *See Kelley*, 513 N.W.2d at 111.

> filing . . . is it an enhanced amount because of this or was it 450 an hour for these type of cases, and so the city said the base lodestar amount is $61,700, if we take that number of hours expended times the enhanced rate of $450 an hour. *Nobody disputes that calculation.*

(Emphasis added).

[¶21.] Although the circuit court did not re-state this calculation in its written findings, it noted the City's view that the lodestar amount established a reasonable fee, stating, "[the] City has proposed a reasonable attorney fee of $61,740." Further, since the City did not dispute that the lodestar calculation was reasonable, the circuit court's written findings primarily addressed whether there should be an enhancement under the *Kelley* factors, which was the only issue in the case.

[¶22.] We have explained in attorney fees cases that written findings are not jurisdictional, and that this Court may review a challenge to the reasonableness of an attorney fee award, even in the absence of findings, if "the record itself sufficiently informs the court of the basis for the trial court's decision on the material issue[.]" *Toft v. Toft*, 2006 S.D. 91, ¶ 12, 723 N.W.2d 546, 550 (citation omitted). The record demonstrates that the circuit court properly began its analysis using the lodestar calculation to arrive at a reasonable fee award.

[¶23.] The City also argues that the circuit court abused its discretion by relying exclusively on the fee arrangement between Johnson Properties and its counsel to arrive at a fee award. The City relies on *Kelley*, in which we held that a 1/3 contingency fee agreement between the landowners and their attorney did not establish a reasonable fee because it was the only factor considered in determining

reasonableness. 513 N.W.2d at 112. While the circuit court emphasized the attorney fees Johnson Properties incurred under the fee arrangement, the court also considered other factors from *Kelley* to calculate the fee award.

[¶24.]   Citing federal cases, the City further maintains that in considering the other factors from *Kelley*, the court double-counted amounts already built into the lodestar calculation.[4] Specifically, the City argues that the issues in the case were not particularly novel in determining the valuation of property and that the skill, experience, and expertise of counsel in handling condemnation cases was already built into the higher hourly rate he charges for such cases as a part of the lodestar amount.[5] The City also asserts that it was not an exceptional result meriting an upward valuation, as the landowner at trial testified to a much higher valuation for the property than the jury arrived at in its verdict.

[¶25.]   In applying the *Kelley* factors, the court noted, as to the first factor, that eminent domain law is a highly specialized area of law that requires skill and experience, even in a valuation case, to select appropriate valuation experts;

---

4.    The parties do not dispute the inapplicability of factors two (the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer); five (the time limitations imposed by the client or by the circumstances); and six (the nature and length of the professional relationship with the client) to the facts of the case. The circuit court appropriately placed no weight on those inapplicable factors.

5.    The City references the fact that counsel for Johnson Properties acknowledged that his $450 per hour rate for eminent domain work is higher than the rate he charges in non-condemnation cases. However, there is no evidence showing how much of an increase this rate reflects as compared to his regular hourly rate or the hourly rates of attorneys in the area for non-condemnation work. Further, the circuit court was aware of, and considered, the higher hourly rate in its analysis.

understand the factors for market valuation of real estate; and recognize the evidence necessary to support the highest market value.

[¶26.]     In evaluating the third factor, the court found that the fee customarily charged for similar services is a contingent fee and that the fee requested by Johnson Properties was at the low end of the range of reasonable fees typically charged. It also noted that "[t]he only certainty in a contingent fee is uncertainty. Both the client and the lawyer take significant risks under a contingent fee agreement." The City did not dispute the evidence concerning the fee customarily charged in eminent domain cases.

[¶27.]     As for the fourth factor, the court concluded that the amount involved in this case was significant and the results were substantially favorable to Johnson Properties. Specifically, the court found that Johnson Properties recovered $177,156.25 more than the City's highest offer, an increase of 71% over the City's final settlement offer, and that the award was "over 7 times larger than the City's trial valuation ($51,647.00) and almost 12 times larger than the City's offer to [Johnson Properties] before it retained counsel ($32,454.00)."

[¶28.]     Regarding the seventh factor, the court concluded that counsel for Johnson Properties had shown the experience, skill, and ability to handle this eminent domain litigation at a high level. Finally, as to the eighth factor, the court noted that the fee arrangement was contingent and that "Landowner will pay at least $202,973.99 in actual fees to its attorneys," based upon the total recovery, including attorney fees.

[¶29.] The City does not claim any of the court's findings are clearly erroneous. Instead, the City takes issue with the weight and application of the *Kelley* factors by the circuit court. The court carefully and thoughtfully worked through each of these factors, and we are not convinced that the court made "a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable" in applying these factors. *Estate of Mack*, 2025 S.D. 7, ¶ 13, 17 N.W.3d at 879 (citation modified) (citations omitted).

[¶30.] The circuit court's findings closely parallel, and are even more detailed than, the findings made by the court in *Johnson*, where this Court affirmed the circuit court's award of attorney fees in the amount of $174,900 in a condemnation case. 2003 S.D. 115, ¶¶ 3, 15, 670 N.W.2d at 362, 364. There, after applying the factors, the circuit court entered the following findings of fact: (1) the law firm expended approximately 380 hours on the case; (2) the fee customarily charged in the locality was a contingent fee between 33% to 50% of the lift; (3) the fee requested by the Johnsons was at the low end of the range of reasonable fees charged; (4) the amounts in controversy were substantial and the results were excellent; (5) counsel for the Johnsons showed the experience, skill, and ability to perform that type of litigation; (6) the fee agreement was contingent; and (7) the Johnsons had paid fees over $243,005 and requested fees of $165,000 plus tax. *Id.* ¶ 8, 670 N.W.2d at 362. Based on these findings, this Court held that the circuit court "carefully considered all of the *Kelley* factors" and that it did not abuse its discretion by awarding attorney fees in that amount. *Id.* ¶ 10, 670 N.W.2d at 363.

[¶31.]     We affirm the circuit court's attorney fee award of $139,724.60 under SDCL 21-35-23.

[¶32.]     KERN, SALTER, DEVANEY, and MYREN, Justices, concur.